WILLIAM GRUBB, *a Minor, etc.,* v. ROBERT ELDER
*et al.*

**No. 13,208.** ( 72 Pac. 790.)

SYLLABUS BY THE COURT.

SLANDER—*Pleading Justification.* An answer in an action for
defamation of character, pleading justification, must fully meet
the defamatory matter pleaded, as explained by the innuendo, but
where the innuendo attaches a meaning to the language used not
necessarily arising from such language, the justification is broad
enough if it pleads that by the demeanor and conduct of the
plaintiff at the time the language was used it was understood to
be used in the sense set out in the innuendo.

Error from Harper district court; P. B. GILLETT,
judge. Opinion filed June 6, 1903. Affirmed.

*George E. McMahon,* and *E. C. Wilcox,* for plaintiff
in error.

*T. A. Noftzger,* and *George B. Crooker,* for defendants
in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: The day following the death of
President McKinley, in September, 1901, plaintiff, in
the presence of several citizens of Freeport, Harper
county, used language relative to the president which
angered those who heard it and the members of the
community to whom it was communicated. Soon
thereafter a notice, signed by the defendants, was
served on the plaintiff, the same being as follows:

"NOTICE.

"September 15th.

"The person in this township who made remarks
this morning derogatory to our late beloved president
is invited to pack his grip and leave this township at
once, as we will tolerate no one among us who re-

joices in the death of our president by assassination, or any one who sympathizes with anarchists.''

Damage was sought in this action for defamation of character by reason of the language employed in this notice. The jury found in favor of the defendants, and judgment was rendered against plaintiff for the costs of the action.

The first assignment of error arises upon the overruling of plaintiff's demurrer to that part of defendants' answer pleading justification. The plaintiff, in stating his cause of action, set out said notice with innuendoes as follows:

''The person (meaning thereby this plaintiff) in this township (meaning thereby Silver Creek township, referred to in the first cause of action above set forth) who made remarks this morning derogatory of our late beloved president is invited to pack his grip and leave this township at once, as we will tolerate no one among us who rejoices in the death of our president by assassination (meaning thereby to charge and publicly declare that this plaintiff was or lately had been triumphing and rejoicing in the assassination of President McKinley), or any one who sympathizes with anarchists (meaning thereby to charge that this plaintiff was a sympathizer with anarchists, and especially with that detestable anarchist who had then but recently assassinated our lamented president).''

The material portions of the defendants' answer pleading justification were as follows:

''The language used, and the matter contained in the paper attached to the plaintiff's petition in this action, which said language and matter is charged in said second cause of action to be defamatory to the plaintiff, is true, in this: That on or about the 15th day of September, 1901, the same being the day following the death of William McKinley, late president of the United States, the plaintiff, in the presence of

and against the protests of a large number of the citizens of Freeport and vicinity, in Silver Creek township, in said Harper county, in answer to and in connection with expressions of grief on the part of the said citizens of Freeport and vicinity over the death of William McKinley, spoke and uttered the following words: 'I'd as lief vote for a damned dog as for McKinley. He was no better than a damned dog. Any man who sympathizes with his family hasn't any sense'; and made use of other words and expressions of like character, and by his demeanor and conduct, as well as by the language that he used, plaintiff showed that he did not in any manner sympathize with the grief felt by the people of Freeport and vicinity as aforesaid, and that in fact he rejoiced in the death of William McKinley at the hand of the assassin."

It is now insisted that by reason of the innuendo laid in the petition the defamatory matter set out was that the plaintiff rejoiced in the assassination of the president and sympathized with the anarchist who had committed the crime; that the justification must be coextensive with this charge; and further, as only the quoted words are counted upon as justification and no facts pleaded which would justify the conclusion laid by the innuendo, that the matters stated in the answer were not coextensive with the matters charged in the petition, and hence were not sufficient to constitute justification. It must be noticed, however, that, in addition to pleading specific words, there was the further averment that by his demeanor and conduct, as well as by his language, the plaintiff showed that he did not sympathize with the grief of the public upon the assassination of the president, and that as a matter of fact he rejoiced therein. No motion to make more definite and certain by stating what these acts were was filed. We are not intimating that one should have been sustained if filed.

Grubb v. Elder.

Many indescribable, but very expressive, acts may be committed, serving to emphasize and give character to one's words, that cannot adequately be put upon paper. A look of the eye, a toss of the head, a gesture or posture might give very much of added meaning to a phrase and real import to a word, which would more easily be determined by seeing the speaker and his actions at the time the word was uttered than merely by reading the same from cold type or irresponsive writing. A phrase with one inflection or with one expression might carry to its hearer one meaning, while the same phrase with another inflection and expression might carry to its hearer an altogether different meaning. Here, the sting of the defamatory matter charged is found in the innuendo ; that is to say, in the allegation that by the use of the language in the notice the defendants intended to charge that the plaintiff entertained the reprehensible sentiments mentioned in the innuendo. The justification is that those who heard the words understood them, by reason of the demeanor and conduct of the plaintiff, in the way the innuendo alleged the defendants used them. With this view, it seems to us that the justification pleaded was as broad as the libelous matter contained in the notice, as explained by the innuendo. To be sure, the defendants did not plead in words that would justify the conclusion that plaintiff rejoiced in the death of the president or sympathized with the assassin, yet they did plead that, accompanying the words which he uttered, were acts and conduct such as warranted those hearing the words in believing that he did so rejoice and sympathize. We think the demurrer was properly overruled.

It is next claimed that there was not sufficient in

the proof, and this because the defendants did not prove all of the language which their answer claimed the plaintiff used. Upon this point the principal witness for the defense testified concerning what plaintiff said : "I heard some one making the remark, 'I would just as soon vote for a God damn dog as William McKinley.'" Whereupon witness replied to the plaintiff : "Young man, you ought not to use such language at this time, with our president lying dead." To which plaintiff replied : "By God, I said it, and I am here to back it up." Witness answered : "You ought to be drummed out of the county, to use such language." Plaintiff replied : "By God, there are not enough men in town to do it." Witness replied : "You insult every man, woman and child in the United States, using such language at this time." Whereupon plaintiff made the remark : "Any man that would be insulted at that was a damned fool, and did n't have any sense."

Another witness testified that he was told by this same witness in the presence of the plaintiff that plaintiff had said : "I would as soon vote for a damned black dog as vote for William McKinley." There was considerable other evidence as to the violent character and tone of these expressions by the plaintiff, and his unseemly conduct on that occasion. In view of the fact, as we have already noted, that the gravamen of the defamatory matter consisted in ascribing to the plaintiff a condition of mind that caused him to rejoice at the death of the president and to sympathize with his assassin, rather than in the utterance of the words exactly as charged in the answer, we are satisfied that the proof approached near enough to the allegations of the answer to be submitted to the jury. It was for them to say, upon

all of the evidence, both as to the words used, the conduct, acts and looks of the plaintiff, whether he entertained the sentiments ascribed to him by the defendants as alleged in the answer.

Complaint is made that the defendants filing separate answers were permitted to exercise each for himself peremptory challenges in the making up of the jury.  The record shows that defendants each and all demanded that they be permitted to challenge three jurors peremptorily, and the court ruled :

"Thereupon it is decided by said court that said defendants Louis Pohl and H. A. Thomas be permitted to challenge three jurors peremptorily, and that the remainder of said defendants as a body be entitled to challenge three additional jurors peremptorily, in the impaneling of the jury."

This ruling was excepted to by the plaintiff, but we find no indication anywhere in the record that defendants availed themselves of the privilege to which the court thought they were entitled ; in other words, if the court erred in the matter, which we do not decide, it is not shown that the error was availed of by defendants.

It seems that after the commencement of the action plaintiff, then being in Illinois, wrote to one of the defendants offering to settle the matter for $250.  This letter the court permitted defendants to introduce in evidence.  This action is alleged as a ground of error.  We hardly see the relevancy of the letter, or why the court permitted it to go to the jury, but we are equally at a loss to see how it affected the plaintiff deleteriously.  To be sure, the general rule of evidence is that an offer to compromise, if it appears. that the same was made and received as such, may not be put before the jury to the prejudice of the one

offering, as the law desires to promote the adjustment of difficulties without resort to the courts. Here, however, it does not appear that defendants understood this to be an offer of compromise. If they had, the introduction of the letter could not have served to reduce the amount of plaintiff's damages, inasmuch as he was given no damages, not even the amount he offered to accept, and, hence, it was not prejudicial to him.

Complaint is made that the court copied the pleadings practically verbatim in its instructions, and committed error under the rule announced in *Meyer v. Reimer*, 65 Kan. 822, 70 Pac. 869, and *Stevens v. Maxwell*, 65 id. 835, 70 Pac. 873. But we find that in addition to thus copying the pleadings he did also what is recommended in the cited cases—summarized the issues made by the pleadings, and directed the attention of the jury to the material questions involved. Probably the copying of the pleadings *in extenso* was unnecessary, but not harmful.

We do not think that any useful purpose will be served by a discussion of the questions raised upon the instructions given and refused. The disposition already made of the questions herein largely dispose of the queries thus raised.

There are two causes of action contained in the plaintiff's petition—one for the frightening away from his home by means of the notice served on him, and one for defamation of character. The court, in submitting the case to the jury, permitted the defendants to request separate findings as to the amount of damages awarded in each of these causes of action and give the amount for each separate item. It is claimed that this was error. Without stopping to discuss whether or not it might have been, had any

damage been awarded, it is very clear that plaintiff suffered no prejudice from this action, for the jury were not called upon to make any separation of the items of plaintiff's damage because they found he was entitled to no damages whatever.

Upon the whole case we find no prejudicial error; hence the judgment will be affirmed.

All the Justices concurring.