Statement of the Case.
BREAUX, C. J.
This is an appeal by plaintiff from a judgment rendered in favor of defendant, in which the court sustained defendant’s exception of no cause of action.
The suit was for damages in the sum of $10,000. It having been tried on the exception of no cause of action in the district court, the averments of plaintiff are taken as true for the trial of the exception on appeal. We have the following statement of facts: It appears that the plaintiff is a well-known and reputable physician, engaged in the practice of his profession in the city of New Orleans, and is dependent upon this practice for a livelihood.
His position among the other physicians and the public is a matter of importance to him. He is opposed, he avers, to advertising in any form in the public press, as only “quacks” advertise.
Defendants are publishers of a daily newspaper, also well known and influential. They published an article which plaintiff says was offensive and of which he complains.
Plaintiff is a member of the Orleans Parish Medical Society. This society condemns advertising by physicians in the public press and considers it as unethical. It adopted resolutions and appointed a committee to interview representatives of the press and request them not to publish the names of members of the regular profession of medicine or place them by publication in the attitude of advertising in any form, as regular practitioners did not resort to advertising,
As a member of the committee, Dr. Martin called upon the defendants’ representative and explained as he alleges (in substance) why it was that regular practitioners did not resort to advertising. He handed a copy of the resolutions of the society to this representative. In a few days the defendant company, he shows, published an article which he deemed injurious and damageable, The article sets forth substantially that the case of a young lady named therein was unique. She had been an invalid for years from congenital hip disease, and that now, owing to the skillful treatment of Dr. Martin, she had almost entirely recovered. That when she was four years old a dislocation of the hip developed, and from that time the ailment rapidly grew worse, but that now she had practically recovered the use of her hips and was on a fair road to recovery. That different physicians had tried their skill on the affected limb and had not met with success, but that under the treatment of Dr. Martin there was every reason to believe that she would soon be in good health. The article goes on and states that when Dr. Lorenz, the great specialist, visited New Orleans and treated patients, Dr. Martin had made a close study of his methods and manner of treatment, which he applied in treating the young lady named. There are other assertions in the article of about the same tenor.
The learned judge of the district court carefully analyzed plaintiff’s petition. For *504 brevity’s sake, in matter of the statement of facts of the case, we have made an abstract of this analysis as follows: Reputable physicians avoid advertising. Quacks advertise.
Glowing accounts of marvelous cures, given by patients or their relatives, should not be published.
The local medical society to which plaintiff owes some fealty is against such methods. Further, the analysis goes on to state at some length, after warning, defendants maliciously, and well knowing the consequent injury, published, anjarticle regarding a ease which was imaginary and fabulous,"" and credited it to plaintiff with intent to bring him into ridicule and contempt, and the further effect of which was to place plaintiff on a level with advertising quacks. In consequence, his business was injured. He was lowered in the esteem of his friends, humiliated, irritated, and annoyed. Then comes the statement that plaintiff as a physician had achieved success where other members of his profession had failed, and that to accomplish this cure he had employed the method of a certain great and world renowned surgeon. The story appeared to have been obtained from the patient’s father, who was, the article in question stated, in substance, overjoyed, and to whom it afforded delight to say kind things of the physician, Dr. Martin. ( The judge’s analysis sets forth that the story, if untrue, was enough to irritate and annoy. The conclusion of the district court at this point is that irritation and annoyance are not of themselves actionable; that it must appear that they are accompanied by substantial injury; that the assertion as a fact that by the use of advanced methods of celebrated surgeons and by his own skillful treatment he had achieved success were not grounds sufficient to recover damages for injury inflicted; that there was no actionable injury traceable to this publication; that the truth or falsity of the publication was immaterial to the issue.
Touching one of plaintiff’s allegations, to wit, that it put the physician in the attitude of an advertising quack, thereby bringing him into contempt, the learned judge’s analysis sets forth (to quote in full) :
“Could I satisfy myself that plaintiff meant to charge and prove that not only such was the effect of the publication, but that it was defendant’s purpose to produce upon the mind of the public and of plaintiff’s friends and fellow physicians the impression that plaintiff had caused such publication to be inserted in its-paper for advertising purposes, I would have no hesitation in concluding that a cause of action had been set forth; for any false impression, produced intentionally and injurious to' some one, is actionable libel upon him, no matter how the publication or what the purpose used to effect a purpose.”
Further abstract from the analysis is, in substance; A cause of action cannot be eked out by inference. The intention to be injurious does not appear in the article in question. It should have been specifically alleged. A charge of malicious publication will not supply the missing allegation as to-innuendo, though it is possible that it was meant. The court held:
The falsity of the article in question was' not, under the circumstances, sufficient ground of action. It must appear that “defendant meant to produce the impression' that plaintiff procured this publication for the purpose of advertising himself, whilst in fact he had not done so.”
The court accorded time to plaintiff to-amend his petition. As he did not avail himself of the grant of time to amend, the case was dismissed.
We had two motives in inserting the foregoing epitome of facts.
First. Because the original analysis, and we trust its summary, strongly brings out the facts.
Second. Because of the weighty reasons stated, upon which our brother of the district court based his judgment.
*505 We hope that the difference of opinion, between ourselves and our brother will serve by reference to the foregoing statement to render more evident the theory of the case.
Judgment.
In considering the publication of the article we are necessarily led to consider, in view of the admissions made for the trial of the exception, 4, whether it was calculated to injure plaintiff in his profession. Of course, we need not go further than the allegations of the petition themselves. These allegations charge injury in most positive terms and aver a malice which expands itself into the different averments of the petition. There was no necessity in drafting the petition of repeating the word “malice” or “malicious” in every paragraph, for the word “malice” or “malicious” followed and qualified every sentence of the petition, similar in character. It was charged that the whole article was published “maliciously,” and it thereby characterizes each utterance of the petition touching the asserted libel. To illustrate: As it will serve two purposes, we quote one of the sentences of the petition, to wit:
“That the feeling against such advertising is very pronounced among the regulars, and doctors who resort to it are looked upon with contempt by the regular practitioner and the public; that advertisements are confined exclusively to quacksalvers.”
As to the first purpose, it appears on the face of the papers that the allegation as made places the plaintiff in the category of the “quacksalvers.”
But we said that we had two purposes in quoting the sentence. We take up the second purpose, which is (to take up the proposition set forth in the judge’s reason for .judgment) that in order to make out a case it was necessary to allege and prove that the article meant to produce the impression that (quoting) “plaintiff • had been instrumental in having his asserted cure advertised, whilst in reality he had not”; that is, whilst in reality he had not given the publication of the article his assent.
There is no question, had plaintiff amended his petition, and alleged as before mentioned, that he would have had an indisputable cause of action.
But we really do not think there was downright necessity of going to that extent in order to aver a cause of action.
In our view, if the publication was malicious, and if it was injurious to plaintiff, it would afford ground for action. True, the words of the article are of praise and congratulation, and no one would seriously contend that they are in themselves actionable.
True, words of praise and gratulations are not actionable. But words of praise and gratulations may — on rare occasions, fortunately — lead to injurious consequences, lose their grace and charm, and become actionable.
An illustration, though not direct in point, will, we hope, aid the discussion.
Suppose an artist, very similar in appearance to an Asiatic, a Chinaman, none the less a white man; and suppose a much admired painting is in one of the art galleries. It bears no name. Only the word “Unknown” is written in the lower margin. The public is convinced that it was painted by a Chinaman. There was no one to deny the general belief.
A writer of an article to be published lauds the great artist extravagantly, and, actuated by malice, untruly states that this artist is the “unknown.” He is well aware that his praise of the portrait and of this artist, with -the attention called to it (generally thought to be the work of a China-man), will persuade the public that he is the painter and a Chinaman. He had been warned before the article was published that the artist will thereby be driven from *506 society and denied the companionship of his friends.
As the writer thus accomplishes a malicious purpose, he, the artist, should have a right of action to prove that a wrong has been committed and to vindicate his good name.
The physician, who by inference finds himself classed with quacksalvers, on the same principle will be entitled to a hearing, or at any rate should not be turned out of court, unless it appears that he is in error in thus contending.
Plaintiff’s contention further is that:
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”
Civ. Code, art. 2315, in which the quotation supra is embodied, is based upon the broad and beautiful precept laid down in the Institutes of Justinian, to wit: “Alterum
non Isedere” — to hurt no one; a precept which has inspired the justice of ages; a broad provision covering injuries growing out of wrongs committed.
Carrying out that precept, this court held that technical distinctions are not entitled to favor. Spotorno v. Fourichon, 40 La. Ann. 424, 4 South. 71.
The courts have passed upon questions bearing upon some of the issues. Recently it was decided that slanderous words — and, it follows, libelous words — may be actionable, even though they do not consist of an unequivocal and positive assertion. Covington v. Roberson, 111 La. 338, 35 South. 586.
By the strongest implication the court in • another case holds that a man who has used harsh and insulting language to another can be held to respond in money. Graham v. Western Union Telegraph Company, 109 La. 1074, 34 South. 91.
We pass for a few moments to a consideration of decisions rendered in other jurisdictions.
In the number rendered there is frequently decided difference in the views expressed. The common-law system has not gone as far as the civil law in upholding actions for injurious words spoken or written. Yet even under that system there are decisions which uphold the principle laid down under the latter laws.
The question presented for consideration in a case before us was whether the charge in itself was defamatory in words. The court held, whether the words were in themselves defamatory or not, there were circumstances which would render them actionable. Morasse v. Brochu, 151 Mass. 567, 25 N. E. 74, 8 L. R. A. 524, 21 Am. St. Rep. 474.
We think that under the circumstances here the cause should be heard on the merits and the right of parties determined after having heard the testimony, and that they should not be finally passed upon whilst trammeled by the admission before mentioned.
We understand that if there is a doubt it should be resolved in favor of trial upon the merits.
We will add, before concluding, that we are not inclined to fan into greatest importance an issue which cannot be thus characterized. At the same time it is evident to us that there is principle involved — the right of privacy and its extent, for it has considerable limitations.
It cannot be decided on an exception of no cause of action.
It is therefore ordered, adjudged, and decreed that the judgment in this case is annulled, avoided, and reversed; the exception of no cause of action is overruled; that the ease be remanded for reinstatement and it be tried in accordance with the views before expressed.
Appellee to pay the costs of appeal, and those of the district court to await the final determination of the suit.