No. 18,865.

W. B. CULBERTSON, *Appellee*, v. B. J. SHERIDAN et al.,
*Appellants*.

### SYLLABUS BY THE COURT.

1. AGENCY — *Sale of Real Estate — Agency Established — Purchaser Produced—Sale Completed—Commission Earned.* The defendants wrote a letter to a real-estate agent, placing a tract of land in his hands for sale at a net price of $11.50 per acre, the land to be sold at enough above the price named to pay the agent's commission. The defendants reserved the right to take the land off the market or to change the price without notice to the agent. The letter came into the hands of the plaintiff, a real-estate agent, who set about to find a buyer. Correspondence with the defendants followed in which the plaintiff's efforts were recognized precisely as if the letter had been addressed to him. The plaintiff procured a purchaser for the land at the price of $12.50 per acre, and so notified the defendants. Afterwards the plaintiff brought the purchaser and the defendants together and the defendants sold the land to the purchaser for $12.50 per acre, on terms satisfactory to them. Just before the contract of sale was signed the defendants attempted to raise the price to $12.50 per acre net to them. *Held,* the defendants are liable to the plaintiff for the difference between the net price quoted in the letter and the selling price, as his commission.

2. SAME—*Petition—Facts Inartistically but Sufficiently Stated.* The petition set forth informally and somewhat inartistically the facts stated. Motions to strike out, to make more definite and certain, and to separately state and number, and a demurrer, were overruled. When the case was called for trial the defendants were prepared to proceed. All the evidence of both parties bearing upon the transaction involved was produced, and the cause was fully tried. *Held,* it is of no consequence now whether or not the petition contained irrelevant matter, or presented the plaintiff's theory of his rights too cloudily or too multifariously, or upon close analysis lacked definite specification of some element necessary to the formal and technical statement of a legal claim for a real-estate agent's commission.

3. SAME—*Relation of Partnership Between Plaintiff and Others Not Established—Plaintiff Real Party in Interest.* The plaintiff and two other real-estate agents officed together, each

Culbertson v. Sheridan.

paying part of the office expenses, each having his own desk and stationery, and each doing business in his own name. Whenever one assisted another in negotiating a sale of land the commission would be divided. The plaintiff acknowledged that he was under obligation to divide the commission in this case. *Held,* the three men did not constitute a firm having a partnership claim against the defendants. There was no privity between the defendants and the plaintiff's associates, the commission earned belonged to the plaintiff, the share to which his associates were entitled constituted a personal debt due from him to them, and the action was properly commenced in the plaintiff's name.

4. PRACTICE—*Trial—No Prejudicial Error Shown.* Various assignments of procedural error examined and held to be illfounded and the matters complained of to be without prejudice to the defendants' substantial rights.

Appeal from Reno district court; CHARLES E. BRANINE, judge. Opinion filed November 14, 1914. Affirmed.

*F. P. Hettinger,* of Hutchinson, and *Frank M. Sheridan,* of Paola, for the appellants.

*Frank L. Martin,* and *Van M. Martin,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover a real-estate agent's commission. The verdict and judgment were in favor of the plaintiff, and the defendants appeal.

The essential facts are few and are substantially undisputed. About July 15, 1909, the defendants wrote to a firm of real-estate agents in Scott City, placing in their hands for sale two sections of land in Scott county at the price of $14,700. This price lacked $20 of being the equivalent of $11.50 per acre. The letter contained the following explanation and reservation:

"This means that the properties are to be sold at enough above the prices named, to pay your commission. I reserve the right to take the lands off the

market at any time or change the price of same without notice to you."

The letter came into the hands of the plaintiff, who set about to find a buyer. He submitted some offers to the defendants, and a correspondence was conducted with the defendants in which the plaintiff's activity was recognized precisely as if the letter had been addressed to him. The plaintiff secured a purchaser for the land, J. W. Lough, at the price of $12.50 an acre, which, under the terms of the letter quoted, gave the plaintiff one dollar per acre, or $1280, as his commission. Lough was anxious to obtain the land, and was prepared to take it at the price of $12.50 per acre, or $16,000. The plaintiff notified the defendants of the result of his efforts by a letter dated August 7, 1909, a portion of which reads as follows:

"Since the receipt of your letter a few days ago I have had a talk with Mr. Lough, he had a contract to furnish so many quarters of land to a company and his contract was complete including your two sections of land, and he wanted to send the contract and finish his work so I gave him a contract on your land allowing you eleven fifty per acre without any commission or discounts of any kind, your land of course to be free and clear the 6th of August, he to pay you twelve hundred and eighty dollars cash and all the balance in six months from that date."

On August 10 one of the defendants wrote the plaintiff the following letter:

"In reply to your letter about signing a contract with Lough, I can only say that I must wait to get word from or confer with Frank M. Sheridan, before I can reject or ratify the contract. Of course, I had given you no authority to sign our name to a contract."

On August 16 the plaintiff wrote the defendants as follows:

"Not having heard from you I have been thinking pretty seriously about your deal for the last couple of days. Which lead me to a talk with Mr. Lough, just a while ago, in which he informs me that he still has

the money here in the bank to make you that $1280, payment, as per my former letter, as soon as the contract is received at the Bank."

On August 17 the defendants replied that they had not yet decided to accept the offer but would let the plaintiff know very soon. A few days later B. J. Sheridan went to Scott City. The plaintiff brought Sheridan and Lough together in the plaintiff's office, and Sheridan sold the land to Lough for $16,000, $1280 cash and the remainder in five months. Before the contract was signed Sheridan changed the price of the land to $16,000 net to him, and thus, in effect, absorbed the plaintiff's commission. The defendants in their brief say the jury found the price was changed the day before Sheridan closed the deal with Lough, but the finding is as follows:

"Is it true that the price of the defendants on the lands in question had been changed at least a day or so before the contract was entered into by defendants with Lough for the sale of the lands in question, to $16,000, net, to the defendants? A. No."

The brief of the defendants does not contest the conclusive character of this finding.

There was testimony that just before B. J. Sheridan went to Scott City the defendants decided they would raise the price to $16,000 net to them if they could not obtain cash and were obliged to extend the time of payment, but they, in fact, accepted the purchaser and substantially the terms tendered to them by the plaintiff's letter of August 7, long before this decision was made. The change in terms from $1280 cash and the balance in six months from August 6, to $1280 and the balance in five months from the date the sale to Lough was finally consummated, is too trifling to be considered.

From the foregoing it necessarily follows that the defendants are liable to the plaintiff for the commission sued for. The defendants were simply mistaken in

their opinion that they could, as against the plaintiff, raise the price of the land at the time they attempted to do so, and substantial justice has been accomplished by the rendition of the judgment of the district court. It is not important, therefore, whether or not the procedure by which this result was obtained was free from flaw. As this court has many times declared, rules of procedure are not ends in themselves. They are merely means by which correct results can be obtained, and no appeal is meritorious which seeks to overturn a manifestly correct result merely because of procedural nonconformity.

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court." (Civ. Code, § 581.)

This opinion might well stop here, but the various assignments of error discussed in the defendants' brief will be given attention.

The petition was attacked by those howitzers of procedure, the motion to strike out, the motion to make more definite and certain, the motion to separately state and number, and the demurrer. They were all overruled.

The true office of a petition is to apprise the court and the adverse party of the nature of the claim presented. Although defective in form, the petition in this case performed that function. It clearly advised the defendants that, acting on their letter of July 15, and with their subsequent knowledge and acquiescence, the plaintiff produced Lough as a purchaser of the land at a price which gave the defendants the net sum they specified and gave him a commission of one dollar an acre; that the defendants accepted Lough as a purchaser upon those terms, sold the land to him, and then refused to pay the plaintiff his commission. The event

of the trial showed that the defendants understood well enough what the lawsuit was about, and were prepared to defend it. The undisputed correspondence between the parties was produced. The ultimate sale to Lough was not disputed. The only conversations of importance affecting the controversy were between persons who were witnesses and gave their testimony at the trial. There is no contention in the brief that at the hearing of the motion for a new trial additional evidence, written or oral, material to the issues, was presented. The resources of both sides were exhausted and the whole case was fully tried out. Whether or not the petition contained irrelevant matter, or presented the plaintiff's theory of his rights too cloudily or too multifariously, or upon close analysis lacked definite specification of some element necessary to the formal and technical statement of a legal claim for a real-estate agent's commission, is of no consequence now.

Complaint is made that some bits of evidence were rejected. There is nothing to indicate that the result would have been changed if the evidence had been admitted, but the rulings of the district court were correct.

After Lough bought the land he wrote a letter to B. J. Sheridan in which he said that "Some of those fellows are going to hold you up for a commission." The claim is that this letter indicated an interest in the subject matter of the suit different from that displayed by Lough's testimony at the trial. The abstract fails to sustain the claim. It is barren of any showing that Lough's testimony was colored by interest or partiality. He was not examined with reference to his interest or any change of sympathy and could not be impeached by a showing of contradictory statements or attitude until contradictions arose. The subject of a commission to the plaintiff did not become a matter

18—93 KAN.

of dispute, so far as Lough was concerned, until the plaintiff, Lough, and B. J. Sheridan were together in the plaintiff's office just before the contract of sale was concluded. Lough's account of what took place there does not differ materially from that of Sheridan.

The contract of sale to Lough was prepared by B. J. Sheridan himself, and there is no contention by anybody that it did not express a sale. Lough, however, was really buying for others, as stated in the plaintiff's letter of August 7. On September 16 Lough wrote the defendants the following letter:

"My option people wants deeds in blank and abstracts down to date here in either bank as soon as possible. They have a man here examining the abstracts. We have nearly all in. Please don't delay this. They are expecting big lot buyers next week. Leave name of grantee out and it can be put in here. Instruct bank to insert name of grantee and to collect balance of your money on the deeds."

The defendants say this letter, if read in evidence, would have tended to show that the negotiations between the plaintiff and Lough contemplated nothing but an option. A conclusive answer is that Lough could not bind the plaintiff by any interpretation which he might place upon the transaction subsequent to its conclusion, in a communication to the defendants to which the plaintiff was not privy. Besides this, Lough's letter referred to a transaction of out-and-out sale. The fact that he alluded to an actual sale as if it were an option had no tendency to prove that the negotiations for a sale were negotiations for an option, and no matter what name he had for the deal, its true character depended upon what the parties said and did. The proof upon those subjects was clear. Lough testified as follows:

"Q. When you first talked with him [Culbertson] about the land did he tell you what the price of it was? A. No, sir; he didn't tell me what you were pricing it at; he priced it to me.

"Q.   What did he price it at?   A.   $12.50 an acre.

"Q.   What did you tell him?   A.   Before I got through with him I told him I would take the land at $12.50 an acre.

"Q.   At that time?   A.   Yes, sir.

"Q.   He said he could get you the land for $12.50 an acre?   A.   Yes, sir.

"Q.   You told him you would take it?   .A.   Yes, sir."

The defendants in their brief expressly state, and base an argument on the fact, that it is not contradicted that after the plaintiff contracted the land to Lough, Lough kept pressing him to carry out its terms.   Consequently the character of Lough as a *bona fide* purchaser of the land is not a matter of controversy in this court.

Complaint is made of the giving of instruction number seven, wherein the jury were told that an express contract was not necessary to create an agency, but that a landowner may, by acts and conduct, place himself in the relation of principal to a real-estate agent; and of the giving of instruction number nine, which reads as follows:

"9.   One may become an agent of another by acting as such agent with the knowledge of the other, if such other person by his conduct and acts adopts or ratifies the agency.   In this case the defendants had the right to disavow and repudiate plaintiff's authority to find them a customer for their land, but they could not knowingly adopt and approve his efforts to act for them and procure a purchaser, and when he had done so, repudiate his authority and deal directly with the customer of plaintiff's and deprive him of his commission."

The criticism of this instruction is so indefinite that it can not be stated more succinctly than in the brief.

"We chiefly complain of the instructions mentioned, seven and nine, because it clearly is evinced that the court intended that the defendants should be bound on some implied contract.   In fact, told the jury that no express contract was necessary and the court will observe as to instruction nine, which indicated that if the defendants knew that the plaintiff was acting as an

agent, or they adopted or ratified his agency, that then they would be bound to pay his commission, but the question is what was the commission? That instruction can only be proper on the theory that the defendants could be held on a *quantum meruit* in this action for services rendered."

The manner in which the relation of principal and agent may be created in one thing. The duty of the principal to pay the commission earned by his agent and the amount of such commission are different things.

The plaintiff commenced to act, not under a letter to him, but under a letter to another real-estate agent. His right to represent the defendants had to be established. He did so by showing the correspondence with the defendants and their subsequent conduct. The result was that he became the agent of the defendants to find for them a purchaser for their land precisely as if the letter had been addressed to him and he had accepted the employment in writing. This is the subject dealt with by instructions seven and nine. The rules of law stated in these instructions are specifically applied to the facts of the case by instruction number eight, the giving of which is not assigned as error.

There was no claim on the part of the plaintiff that the defendants ever stated to him, either in writing or orally, in so many words, that they would pay him any sum as a commission. He testified there was no "agreement" of that kind, the defendants testified to the same thing, and there was no issue on the subject. The contract was that the plaintiff was to secure remuneration for his services by procuring a purchaser who would buy the land at a sum above the net price to the defendants. When a purchaser was found who would pay one dollar per acre for the land above the net price to the defendants, and the defendants received the excess as a part of the consideration which the purchaser was paying for the land, they were bound, under the law, to turn the excess over to the plaintiff. The jury were not concerned with the legal theory of this duty. That is

Culbertson v. Sheridan.

a subject of study in the law schools. The jury did need to know, however, the conditions of the defendants' liability. That information was given them in instruction six, which reads as follows:

"6. The first question for your consideration and decision is whether, under the evidence, within the rules of these instructions, the plaintiff was authorized by the defendants to act for the defendants as their agent in procuring a purchaser for and making sale of the land. If you find from the evidence that the plaintiff did not have such authority, then this would end your consideration of the case and your verdict should be for the defendants. If you find that the plaintiff had such authority, then you should proceed and consider and determine whether under the evidence, in accordance with the rules of these instructions, the defendants had withdrawn the land from the market and raised its price prior to its sale and terminated the authority of plaintiff to act for defendants before he had earned any commission. If you find that the defendants had so withdrawn the land from the market or raised its price, then your verdict should be for the defendants. If you find that the defendants had authorized the plaintiff to find a purchaser for or make sale of the land and that the land had not been withdrawn from the market or its price raised and that the plaintiff was the procuring and efficient cause in bringing the defendants and J. W. Lough together in negotiations which resulted in the sale of the land to said Lough at $12.50 per acre, then your verdict should be for the plaintiff for the sum of $1.00 per acre for the land sold."

The giving of this instruction is not assigned as error.

The matter of *quantum meruit* for services rendered which inured to the defendants' benefit was not in the case, and was expressly excluded from the consideration of the jury, not only by instruction six but by instruction ten, which, like instruction six, is not complained of and which reads as follows:

"10. If you find from the evidence, in accordance with the rules of these instructions, that the plaintiff was acting for the defendants under the terms and con-

ditions of the certain letter or list sent by the defendants to Daugherty & Starr, then the plaintiff had the right to add as much to the net price of the defendants as he wished for his commission, and if the land was sold for $1.00 per acre above such net price through the agency of the plaintiff, within the rules of these instructions, then the plaintiff would be entitled to receive such excess of $1.00 per acre as his commission."

Some complaint is made of instruction number eleven, which reads as follows:

"11. You are instructed that where an owner has listed and placed land in the hands of a real estate agent for sale and in doing so has reserved the right to take the land off the market or to change the price without notice to the agent, such owner has the right to withdraw the land from the market or change the price thereof without notice to the agent at any time before the agent has procured a purchaser who is willing and able to purchase the land at the price and upon the terms which the owner has authorized the agent to sell, or at a price and upon terms which the owner is willing to accept; but you are further instructed that the owner in such a case does not have the right to withdraw the land from the market or to change the price for the purpose of avoiding liability for the commission of the agent after the agent has procured a purchaser with notice to or the knowledge of the owner who is willing and able to take and purchase the land at the price and upon the terms which the owner has authorized the agent to sell the same, or at a price and upon terms which the owner is willing to accept."

It is said that the instruction was not applicable to the facts and was misleading, because Lough was only an option dealer, his offer did not meet the defendants' terms, before he finally purchased the land was taken off the market, and anyhow the price was raised before he bought. A conclusive answer is that the instruction was entirely proper as applicable to the plaintiff's theory of the case. Besides this, the facts upon which the defendants' liability depended were clearly and specifically set forth in instruction number six, which

Culbertson v. Sheridan.

the defendants accepted as the law of the case, and the verdict of the jury ends whatever dispute there may have been concerning the facts.  As already stated, however, there is no substantial ground for controversy over the controlling facts.  The trifling discrepancy in terms has been referred to.  In any event the defendants appropriated to their uses the plaintiff's customer who was willing and able to buy on the defendants' terms.  This purchaser was one who pressed the plaintiff to get him the land and who bought it on the defendants' terms, not an option dealer.  The land was actually sold on the market, not taken off the market.  The price of the land was not raised until the plaintiff had secured Lough as a buyer for it.  The giving of instruction twelve is not assigned as error.  A portion of it reads as follows:

"The law requires the owner to act in good faith with his agent, and if he attempts to take the land off the market or to raise the price thereof for the purpose of defeating the claim of the agent for commission and proceeds and makes the sale to the customer of the agent, the law will hold such owner liable for the payment of the agent's commission."

The defendants requested the court to give a number of instructions.  Some of them were open to objection.  However, the various subjects to which the requested instructions related were all sufficiently covered by proper instructions which were given, and it is elementary that when correct and adequate instructions have been given the refusal to give others is not prejudicial error.

The court permitted the pleadings to be taken to the jury room, and in the second instruction, after having summarized the acts and conduct of the defendants relied on by the plaintiff as ratification, continued as follows:

"And the plaintiff claims that by all their acts and conduct recited above, and more fully stated in the petition, the defendants ratified and approved," etc.

It is said that the court violated the rule stated in the case of *Railroad Co. v. Eagan,* 64 Kan. 421, 67 Pac. 887, which has been followed in some other cases. The precise ruling of the Eagan case was as follows:

"When the pleadings in a case are lengthy and complex, and made up of multifarious allegations of fact in forms of expression difficult for the ordinary mind to understand, it is error for the court, without defining the issues, to send the pleadings with the jury for them to determine the points in controversy between the parties." (Syl. ¶ 1.)

In the opinion it was said:

"Nor do we mean to hold that the sending of the pleadings to the jury of itself is error. It is the sending of pleadings of the character of the one in question in this case, without an explanation of the issuable facts presented by them, which constitutes error. It is a very common practice, though not a commendable one in any case, to furnish the jury with the pleadings; but it is only when the task is imposed on it to learn from pleadings difficult to understand without aid from the court that error is committed." (p. 426.)

In this case the petition was not difficult for the ordinary mind to understand. Anybody could tell from it what the plaintiff claimed the trouble was. The petition was merely difficult for a trained legal mind to understand, because the story was not told in strict and technical accordance with legal mechanics. It did not in all its phraseology clear the legal chasms existing between contract express, contract implied, and obligations depending partly on writings and partly on conduct. However, on first impression the defendants had a pretty clear idea of what the petition claimed. In the brief it is said:

"The petition apparently in its first consideration would lead one to suspect that the plaintiff was resting his cause of action upon the fact that the defendants had sent a letter to Daugherty & Starr about July 15, 1909, quoting a net price on the lands in question of $14,700 net with the provision in the letter 'I reserve the right to take the lands off the market at any time,

or change the price of the same without notice to you.' (2) And that he had gotten that letter from Daugherty & Starr with the consent of Daugherty & Starr as well as the consent of the defendants, and under its terms had found J. W. Lough, the purchaser, who purchased the land at $12.50 an acre, or a dollar an acre more than the price quoted."

Passing this matter, the court did clearly and succinctly define the issues to the jury and did not send them to the pleadings to ascertain the points in controversy. The case of *Grubb v. Elder*, 67 Kan. 316, 322, 72 Pac. 790, applies, therefore, rather than the Eagan case.

Out of a long list of special questions tendered, the court submitted fourteen to the jury for answer. Some of the questions which the court did submit might well have been excluded. Many of those which were refused did not relate to the ultimate facts of the controversy but constituted a cross-examination of the jury upon particular features of the evidence. Questions six, seven, eight, and nine sought to develop the fact that there was no "agreement" on the part of the defendants to pay the plaintiff a portion of the $16,-000 received from Lough. Question sixteen and some others were framed for the purpose, as stated in the brief, of distinguishing theories of recovery, whether on contract express or contract implied, and whether in *quantum meruit* or not. These subjects have been sufficiently discussed elsewhere in this opinion. It is further argued that the answers to the questions just referred to would have shown that the plaintiff contracted the land to Lough at $12.50 per acre, that Lough continued to urge the plaintiff to carry out his bargain, and that when the plaintiff discovered that Sheridan would not sell for less than $16,000 net to him the plaintiff was willing that Sheridan should do so rather than be in default to Lough. This argument is disposed of by a special finding of the jury, not printed in the defendants' abstract, but which is found

in the certified copy of the journal entry of judgment on file in this court. It reads as follows:

"Is it true that because the plaintiff had agreed and assured J. W. Lough he would get him the lands in question at $12.50 an acre, on Lough's terms of payment, that plaintiff was willing, when he learned that the defendants would not accept the said price on said terms, unless the full purchase price of $16,000 should be paid, net, to defendant that the sale should be made that way? A. "No."

Question twenty inquired if Sheridan would have contracted with Lough unless he undertood he was to keep the entire sum of $16,000. Neither the court nor the jury were concerned with what Sheridan might have done when in some other frame of mind. They were concerned merely with what he did do under the circumstances as they in fact existed. Whatever Sheridan believed with respect to a division of the proceeds of the sale with the plaintiff, having accepted the plaintiff as his agent to find a purchaser and having accepted the purchaser found by the plaintiff, the law requires him to pay the agent's commission.

Other special findings refused are not specially insisted on in the brief and consequently they need not be noticed further.

The defendants ask that the judgment be reversed on account of a collateral issue which came into the case.

The plaintiff and two other real-estate agents, Carl M. Starr and John Brenemen, officed together, each paying part of the office expenses, each having his own desk and stationery, and each doing business in his own name. Whenever one rendered assistance to another in negotiating a sale of land the commission would be divided. The plaintiff acknowledged that he was under obligation to divide the commission on the sale to Lough with Starr and Brenemen. The defendants asked the plaintiff on cross-examination whether or not he and Starr and Brenemen were partners. He

Culbertson v. Sheridan.

answered that they were. He also said they were "partners in a way," and he said they were not partners, "just special partners you might term it." Of course, these legal conclusions of the witnesses were valueless because the existence of a partnership depended on the facts. Starr and Brenemen were both witnesses for the plaintiff. There is no dispute in the testimony as to the relations of the three men, and the proof clearly showed that they did not in any sense constitute a firm having a partnership claim against the defendants. There was no privity whatever between the defendants and Starr and Brenemen. The plaintiff was the defendants' agent. The commission earned belonged to the plaintiff and the share to which his associates were entitled constituted a personal debt due from him.

When the subject was developed by cross-examination of the plaintiff, his attorney, who was likewise attorney for Starr and Brenemen, undertook to bring it formally before the court for adjudication by making Starr and Brenemen parties to the suit. The defendants objected to this and declared they were not prepared to defend against Starr and Brenemen. Then the plaintiff asked to withdraw his amendment. After a colloquy between the court and counsel the attorney for the defendants stated their position, as follows:

"We take the position that we are not liable to the man who brought this suit; that is the defense in this case."

The amendment was then withdrawn and the trial proceeded.

The court gave the jury the following instruction:

"5. As to the question of the right of the plaintiff to maintain this action and recover, in the event it is found the defendants are liable to pay a commission on the sale of land in question, you are instructed that the plaintiff would be entitled to recover the full amount of such commission in this action for the benefit of himself and any other persons entitled to receive a portion of any such commission recovered by the plaintiff."

While this instruction might have been simplified, it was substantially correct as applied to the facts.

The defendants cite many authorities to the effect that an action must be brought in the name of the real party in interest and that a single partner can not sue to recover a debt due his firm—propositions which the plaintiff does not dispute; but no authorities are cited to sustain the proposition that. the liability of the defendants in this case accrued to a partnership instead of to the plaintiff. The settled law is distinctly to the contrary.

While all the arguments presented in the defendants' brief have not been referred to, all the assignments of error discussed there have been categorically considered, and the court is satisfied that the record is free from error prejudicial to the substantial rights of the defendants.

Therefore, the judgment of the district court is affirmed.