No. 19,422.

S. B. HAMILTON, *Appellant*, v. F. J. MCKENNA, *Appellee.*

No. 19,423.

J. F. RESSELL, *Appellant*, v. F. J. MCKENNA and ADDIE
MCKENNA, *Appellees.*

SYLLABUS BY THE COURT.

1. DAMAGES—*Amount Involved Less than $100—Not Appealable.*
A pleading charged that the operator of a mutual telephone
company refused the plaintiff, who was a member of the com-
pany, the services due a member unless he would pay an ex-
cessive and unauthorized charge, which refusal damaged the
plaintiff in his business in the sum of one thousand dollars.
It appeared, however, from all the allegations that the amount
in controversy did not exceed one hundred dollars exclusive of
costs. *Held*, that a cause of action was stated, but not for an
appealable amount.

2. DAMAGES—*Duty to Mitigate Damages.* The rule that one
seeking to hold another for damages must use reasonable
efforts to mitigate such damages—followed.

3. SLANDER—*Words Not Slanderous.* A statement made to the
plaintiff in the presence of others, "All I want you to do is to
pay your honest debts," *held* not slanderous.

4. SLANDER—*Action Appealable.* An action for damages for
slander is appealable regardless of the sum claimed.

Appeal from Anderson district court; CHARLES A.
SMART, judge. Opinion filed April 10, 1915. No
19,422 modified. No. 19,423 dismissed.

*R. H. Bennett, R. E. Cullison,* both of Iola, and *C. F.
Richardson,* of Garnett, for the appellants.

*Charles W. Garrison, Manford Schoonover,* and
*Noah L. Bowman,* all of Garnett, for the appellees.

The opinion of the court was delivered by

WEST, J.: The only question presented by this ap-
peal is whether or not the amended petition (both cases
being treated as one) states a cause of action, the plain-

tiff having appealed from an order sustaining a demurrer thereto.

In substance the pleading alleges that in Colony there was a mutual telephone company operating as a joint-stock concern for the purpose of rendering service to any one in the vicinity who would purchase stock therein. The plaintiff was a stockholder, but upon removing temporarily from Colony he transferred his stock to another company. The defendant owned and operated an independent system and maintained a switchboard and had connected with this system a number of patrons using his telephones; that the defendant proposed to take over the switchboard of the mutual company and all their business and perform all their services himself, leaving the mutual company to conduct the business pertaining to this organization and the extension of its system and the control of its relation with its own members; that this proposition was accepted and the switchboard was removed to the defendant's place of business, after which he undertook to perform towards the members of the mutual company all the obligations of that company. The mutual company undertook to furnish its members telephone service at cost, each member to contribute twenty-five cents a month, the price regularly charged his patrons by the defendant being one dollar a month; that upon returning to Colony the plaintiff tried to purchase stock in the mutual company but was prevented by intimidation and other improper influence of the defendant upon the officers of the company and was thereby rendered unable to procure telephone services for his home or office unless he accepted the telephone of the defendant and paid the price demanded by him; that prior to January, 1912, he installed one of the defendant's instruments in his house and paid one dollar a month therefor; that he had become an owner of certain stock in the mutual company, entitled to all the rights of a member; that he so advised the defend-

ant and demanded that connection be made with his office to operate his office and home telephones as mutual telephones, which the defendant refused to do, and refused to allow any service to the plaintiff as a member of the mutual company. Plaintiff's office telephone was connected with one of the rural lines running into the city over which the defendant agreed to furnish free service and all telephone connection with the members, and the plaintiff demanded that his instrument be so connected, which the defendant refused to do; that after making the agreement between the mutual company and the defendant the only switchboard in Colony used in connection with these companies was the one operated by the defendant and the plaintiff had no means of connection except through these boards; that in March, 1913, it was agreed that the plaintiff should pay the defendant one dollar a month for his office telephone upon condition that if it should finally be determined that he was entitled to the rights of a member of the mutual company the defendant should repay him the excess over the charge required of members. Whereupon the office telephone was connected; that after the state utilities commission had settled a certain controversy between the patrons of the mutual line and the defendant, including the rights of the plaintiff as a member of the mutual company, it was ordered by the commission that the plaintiff's home telephone be placed upon the list at twenty-five cents a month; that afterwards the defendant presented a bill for $5.40. The plaintiff demanded the return of $12 overcharge, which left still due the plaintiff $6.60 which the defendant refused, and he has since refused to switch the office phone or allow the plaintiff to use it; that because of business transactions by the plaintiff his office phone was a matter of pressing necessity and to be deprived of its use was a continuing injury, and that by reason of the defendant's refusal to allow plaintiff to use his office telephone during January and February,

14—95 Kan.

1912, and since November 7, 1912, he had been damaged .in the sum of $500, and by reason of the excess charge the defendant was indebted to him in the sum of $6.50, with interest.

The defendant argues that if all the matters in controversy were settled by the utilities commission nothing was left but the overcharge. But such is not the allegation. There is no attempt to allege what controversy was thus settled except the plaintiff's rights as a member of the mutual company, which was "One of the matters heard and determined by said board, and it was the decision of said board that the plaintiff at all times from the first of January, 1912, was a member of said Mutual Telephone Company and entitled to all the rights, privileges and benefits accruing to the members of said company including their rights under the arrangements hereinbefore referred to with said defendant." It is therefore for his damages suffered by having these rights withheld that he sues.

It is also urged that by paying the excessive and unauthorized charges the plaintiff could have had the services, and hence his damages can not exceed such excess. It was his duty, upon refusal to accord his rights, either to bring proceedings to compel recognition of such rights or else to mitigate the damages by submitting to the exaction in case he intended to hold the defendant responsible for such damages. (*Holly v. City of Neodesha,* 88 Kan. 102, 113, 127 Pac. 616; *Atkinson v. Kirkpatrick,* 90 Kan. 515, 519, 135 Pac. 579; *Maddux v. Telephone Co.,* 92 Kan. 619, 141 Pac. 585.) It seems clear from the pleading that had the unauthorized charge been paid as demanded the requested services would have been rendered, and that hence the only actual damages shown to have been suffered consist of the unauthorized overcharge. The pleading thus far states a good cause of action for this sum, but no construction could bring the damages up to one hundred dollars, and therefore if this were all

Hamilton v. McKenna.

the charge it could not be considered, for the reason that the amount involved is less than the sum necessary to make an action appealable. (Civ. Code, § 566.)

It is also charged that in November, 1912, the defendant, in the presence and hearing of a number of persons at Colony, maliciously and falsely, and for the purpose and with the intention of bringing the plaintiff into public disrepute, and for the purpose of injuring his good name and of destroying the confidence which plaintiff's neighbors and friends had reposed in him as an honest and upright citizen, said, in substance, "All I want you to do is to pay your honest debts," meaning thereby maliciously to state and insinuate and expecting to be understood and for the purpose of being understood by the parties present as stating that the plaintiff would not pay his honest debts, thereby injuring the plaintiff's good name and reputation, causing him humiliation and mental anguish, to his damage in the sum of one thousand dollars. One may with perfect innocence be unable to pay his honest debts, and the expression of a desire that he pay them does not impute depravity of nature or willful misconduct. There is nothing set out to show that the language was so spoken, inflected or emphasized as to carry the meaning that the plaintiff was, or led the hearers to believe or understand that he was, a mere repudiator of his honest debts.

While there are cases holding that words innocent on their face may be so used as to be slanderous in fact (*Grubb v. Elder*, 67 Kan. 316, 72 Pac. 790; *Martin v. Nicholson Pub. Co.*, 115 La. 979, 40 South. 376, 4 L. R. A., n. s., 861; *Julian v. Kansas City Star Co.*, 209 Mo. 35, 107 S. W. 496), the majority of the court are of the opinion that the language charged is not slanderous, and that nothing in the petition renders its use slanderous, and hence that no cause of action was stated by this portion of the pleading, but under section 566 of the civil code the action is appealable.

Hamilton v. McKenna.

There is another allegation that by reason of the defendant's refusal to connect plaintiff's office with the rural line and perform for him the services which the defendant had agreed to perform for the members of the mutual company and patrons of the rural line plaintiff has been damaged in the additional sum of one hundred dollars. This appears to be a repetition, however, of the general cause of action for failure to give the plaintiff the telephone services he was entitled to, and does not appear to add anything thereto.

It follows, therefore, that the judgment in No. 19,422 is modified as already indicated. No. 19,423 includes no count for slander and in that case the appeal is dismissed.

DAWSON, J. (dissenting) : The words were slanderous and the petition was good as against a demurrer. (*Henicke v. Griffith*, 29 Kan. 516; *Hess v. Sparks*, 44 Kan. 465, 24 Pac. 979; *The State v. Grinstead*, 62 Kan. 593, 64 Pac. 49; *Grubb v. Elder*, 67 Kan. 316, 72 Pac. 790; *Bashford v. Wells*, 78 Kan. 295, 96 Pac. 663; *Cooper v. Seaverns*, 81 Kan. 267, 105 Pac. 509; *Gano v. Cunningham*, 88 Kan. 300, 128 Pac. 372; *Neosho County v. Spearman*, 89 Kan. 106, 130 Pac. 677; *Brock v. Francis*, 89 Kan. 463, 473, 131 Pac. 1179; *Roberts v. Pendleton*, 92 Kan. 847, 142 Pac. 289; *Martin v. The Picayune*, 115 La. 979, 40 South. 376; *Julian v. Kansas City Star Co.*, 209 Mo. 35, 107 S. W. 496; *Hutchins v. Page*, 75 N. H. 215, 72 Atl. 689; *Hayes v. Press Co.*, 127 Pa. St. 642, 18 Atl. 331; Odgers on Libel and Slander, 1st Am. ed., p. 95.) I therefore dissent.

WEST, J.: I join in this dissent.

MARSHALL, J., concurs in the dissent.