### KEY et al. v. KINGWOOD OIL CO.

No. 14960—Opinion Filed Dec. 2, 1924.

Rehearing Denied June 2, 1925.

**1. Damages—Mitigation — Duty — General Rule.**

The rule that one seeking to hold another for damages must use reasonable efforts to mitigate such damages followed and applied.

**2. Oil and Gas—Breach of Contract to Furnish Gas — Purchase from Defaulting Vendor—Basis of Duty of Vendee to Mitigate Damages.**

Vendor had contracted to furnish vendees natural gas for drilling their oil well, but, gas having advanced in price, discontinued such supply at a time when the well was on the sand unless vendees would pay the advance, offering unconditionally to continue the service on payment of such advance. No other supply of gas was available to vendees for completing their well, and they did not rely on their financial inability to pay such advance. Held, whether it was the duty of vendees, under syllabus 1, to purchase from vendor at such advance for completing their well, did not depend upon any duty to yield to such wrongful demand of vendor or to save vendor from legal consequences, but depended wholly upon the duty to mitigate their own damages.

**3. Same—Duty of Vendees to Purchase of Defaulting Vendor—Rule Stated.**

In such case vendees were not necessarily and as matter of law precluded from recovering from vendor the extra cost of other fuel over their contract price for gas, for completing, and for damages to, their well, caused by delay. Such recovery depended upon whether vendees used such care and diligence in the crisis when the breach occurred as a man of ordinary prudence and diligence would have used under the circumstances then existing, in performing such duty in good faith, to mitigate their damages.

**4. Same—Mitigation—Evidence—Jury Question.**

Since the question, involved in the rule last above, was one of fact for the jury, it was error for the court to refuse the prof-

fered evidence of vendees on their two items of alleged damages and in refusing to submit the whole cause to the jury, under proper instructions, protecting vendor as to the practically undisputed amount due from vendees prior to the breach at the contract price.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by Kingwood Oil Company against J. B. Key et al. on account. Defendants counterclaimed. Judgment for plaintiff. Reversed, with directions.

Fred M. Carter, C. M. Gordon, and Stuart, Sharp & Cruce, for plaintiffs in error.

Arthur H. McLain, for defendant in error.

Opinion by ESTES, C. Parties will be referred to in the order of their appearance in the trial court. Kingwood Oil Company sued Key and others, copartners, for a balance of $1,675 for natural gas furnished defendants for the drilling of their oil well. Defendants entered a general denial and alleged the agreement of plaintiff to furnish the gas at $25 per day; that plaintiff had breached such contract by demanding $30 per day, and shutting off the supply at a time when defendants were about to bring in their well, because defendants would not pay same; that defendants were thereby compelled to shut down their well until they could procure crude oil and wood for fuel; that while shut down, the oil bearing sand of their well was attacked by salt water and the well ruined. Defendants counterclaimed for $1,500 for extra cost of fuel for completing the well, above the contract price, and $10,000 damages to the well. On motion of plaintiff, at the conclusion of the evidence, the court directed the jury to return a verdict for plaintiff for $1,495, based on per diem of $25, and rendered judgment thereon, having refused the offer of testimony to sustain said claims of defendants.

Said contract provided that the gas should be sold at current prices. It is not disputed that the field price of gas had increased to $25 when the said well was commenced, and to $30 in September, 1920. In said month, defendants received written notice from plaintiff that on and after October 1st, following, the price of gas, to all consumers, would be $30 per day, except as to wells then being drilled. On the trial, it was admitted by plaintiff that the said well was then being drilled. The contract was, therefore, for $25 per day. Plaintiff furnished defendants gas for drilling a number of days

each month, except one, until May of the following year when the well was about completed. During the said time, plaintiff furnished several statements to defendants, all of which fixed the price at $30 per day. Said contract also gave the plaintiff the right to discontinue the gas for nonpayment of bills when due, the bill for each month being payable on the first day of the following month. Defendants were in default in paying their bills per contract from November until the following May, except that in April they paid $400 on the account. One of the officers of plaintiff testified that he told defendants that if they did not pay their bills it would be necessary to discontinue the gas; that from three to five days thereafter, in May, the gas was shut off. Counsel for defendants, in opening, stated in substance that defendants were able and offering "all along" to pay plaintiff at $25 per day, and defendants, in substance, so testified. Plaintiffs contend that they should not have paid the $30 demanded—not that they could not or would not have paid the $25. Neither did they plead or contend their inability to pay the $30. The record is clear that plaintiff would not have discontinued the gas in May, had defendants paid delinquent and future bills at $30. Plaintiff offered unconditionally to continue the service if defendants would do so. Plaintiff did not require as a condition to continuing the gas at $30 per day, the waiver of defendants of their claim to the $5. On the contrary thereof, on being asked what the manager of plaintiff said about the $5, one of defendants testified, "He said that matter could be taken care of when I got ready to make the settlement". No other gas was available to defendants for completing their well. Thus it appears that plaintiff breached its contract by demanding $30 per day and discontinuing the service for failure of defendants to pay same.

1. Plaintiff contends that, assuming that it so breached its contract, it was the duty of defendants to mitigate their damages by paying the extra $5 per day, and recoup themselves thereafter. In Blake v. Atlas Supply Co., 51 Okla. 426, 152 Pac. 81, it is laid down that a party whose property is endangered or injured by the act or omission of another must reasonably exert himself to prevent or lessen his damage. Sackett et al. v. Rose, 55 Okla. 398, 154 Pac. 1177.

2. Counsel for defendants characterize as an "astounding proposition" that they were required in any event to pay the $30 per day. In Lawrence et al. v. Porter et al., 63 Fed. 62, 11 C. C. A. 27, the plaintiffs—like defendants here—contended that they could

not supply themselves, at the time the contract was broken, with lumber of the quality and sizes mentioned in their contract either at the place of delivery or any other available market; that they were not required to buy from defendants who were already in default; that to have bought from them would operate both to encourage breaches of contracts and would have been a waiver of all other right for the breach of their agreement. The seller in that case had offered to supply the buyers, unconditionally for cash at a reduced price from the credit price. In the opinion the court said:

"The fact that they could only buy from the defendants does not affect the duty of plaintiffs to minimize their loss as far as they reasonably could. The offer to sell for cash at a reduced price more than equalized the interest for 90 days, which was the value of credit. There seems to be no insurmountable objection in thus permitting a delinquent contractor to minimize his loss. The obligation on the buyer to mitigate his loss, by reason of the seller's refusal to carry out such a sale, is not relaxed because the delinquent seller affords the only opportunity for such reduction of the buyer's damage. Warren v. Stoddart, 105 U. S. 224; Deere v. Lewis, 51 Ill. 254. * * * The opinion in Warren v. Stoddart rests upon the theory that the buyer does not surrender or yield any right of action he may have for the breach of contract. It rests wholly upon the duty of mitigating the loss by replacing the goods by others, if they are obtainable by reasonable exertion. If this duty be such as to require him to buy from the delinquent seller; if the article can be obtained only from him, or because he offers it cheaper than it can be obtained from others, such a purchase from the seller is not the abandonment of the original contract by the substitution of another, nor would the purchase operate to the seller's advantage, save in so far as the damage resulting from his bad faith was thereby reduced. If the seller offers to sell for cash at a reduced price, or to sell for a less price than the market price, although in excess of the contract price, with the condition that it should operate as a waiver of the original contract, or of any right of action for its breach, then the buyer would not be obligated to treat with the seller, nor would the seller's offer, if rejected, operate as a reduction of damages."

See, also, St. Louis & S. W. Ry. Co. v. Reagan (Ark.) 96 S. W. 168; Ressell v. McKenna (Kan.) 147 Pac. 1126; 24 R. C. L. 86, sec. 351. Defendants rely upon Campfield v. Sauer, 189 Fed. 576. That case has no application, because there the injured party was required to abandon his claim for damages for the difference in price. Whether defendants were required under such equitable rule to pay the $30 demanded by plaintiff, did not depend upon any duty to yield to such wrongful demand of plaintiff or to save plaintiff from legal consequences, but depended wholly upon their own duty to mitigate—not to aggravate—their own damages.

3. In Sutherland on Damages (3rd Ed.) section 90, it is said:

"The principle that the injured party must reasonably exert himself to prevent damage applies alike to cases of contract and tort. * * * The measure of duty is such care and diligence as a man of ordinary prudence would use under the circumstances. One may not have done the very thing, nor used the very means, that should have been used, as developed by subsequent information, and yet not be in fault."

The foregoing is quoted with approval in the Blake Case, supra. It may be that if defendants had yielded to the demand of plaintiff and paid the extra $5, their damages had been less. In other words, under the rule last above, it may be the defendants should have so yielded and paid, as the matter thereafter transpired and turned out. Even so, defendants were not necessarily and as matter of law, at fault in not so yielding. The crucial test is, did they use such care and diligence in the crisis when the breach occurred, as a man of ordinary prudence and diligence would have used under the circumstances then existing? Would a man of ordinary prudence and diligence at the time have paid the extra $5 or attempted to procure fuel oil and wood with which to complete the well? The rules herein are not, of course, considered as applied to any other state of facts.

4. Whether defendants at the time the gas was discontinued by plaintiff, under the circumstances and in good faith, exercised ordinary care and diligence by what they did, to mitigate their damages, was a question of fact to be determined by the jury in this case. Blake v. Atlas Supply Co., supra; Sackett et al. v. Rose, supra. The court should have instructed the jury that since plaintiff's was the only gas available to defendants for completing their well, and since plaintiff offered unconditionally to supply the same at $30 per day, it was the duty of defendants to so purchase of plaintiff at that price, if a man of ordinary prudence and diligence in an effort in good faith to mitigate the damages, under all the circumstances then existing, would have done so. If the jury found such issue in favor of defendants—i. e., that it was not such duty of defendants to so purchase of plaintiff— then under proper instructions, the jury

should have determined the amount, if any, due defendants for outlay for fuel over the contract price, as general damages. If said issue was found for plaintiff, then, of course, defendants could not recover any, except nominal damages. If the jury found such issue in favor of defendants, it should also have determined, under proper instructions, the special damages, if any, to the well, if there were any such that were the natural and proximate consequence of the breach. If the jury found such issue for plaintiff, defendants could not throw upon plaintiff any special losses incident to their own failure to mitigate their injury. See Lawrence Case, supra, citing Sedg. Dam. (8th Ed.) sec. 741; Marsh v. McPherson, 105 U. S. 709; Warren v. Stoddart, supra. In any event, the court should have protected plaintiff—as the court did—in its right to recover the balance for the gas furnished them at $25 per day, a matter practically undisputed.

Because the court refused the proffered evidence of defendants to support the items of their counterclaim and directed verdict for plaintiff, it is recommended that the judgment be reversed and this cause remanded, with directions to grant a new trial in accordance with the views herein expressed.

By the Court: It is so ordered.