# Richmond

## M. Rosenberg & Sons, Inc., trading as Oak Hall v. James Lewis Craft.

March 13, 1944.

Record No. 2741.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

514

The opinion states the case.

*Moss A. Plunkett* and *Arnold Schlossberg*, for the plaintiff in error.

*T. W. Messick* and *Walter H. Scott*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

James Lewis Craft, the plaintiff, was an employee of the Radford Ordnance Works, Radford, Virginia. M. Rosenberg and Sons, Inc., the defendant, conducted a mercantile business under the trade name of Oak Hall in Roanoke, selling its merchandise on the installment plan. Craft had been a debtor of defendant but, on March 6, 1942, had paid his account in full. D. E. Thompson, a brother-in-law of Craft, bought a suit of clothes for $27.50 from defendant. He paid $5 in cash and promised to pay $2 a week until the debt was liquidated. Thompson, instead of having the charge made in his own name, had it entered on the books of defendant in the name of J. Lewis Craft. On April 9,

1942, Craft, in response to a dunning letter from Rosenberg and Sons, stated to them that he did not owe the $18 then claimed to be due. An examination of the original sales slip revealed that the merchandise was bought by Thompson. Upon ascertaining this fact, defendant made the following notation upon its books: "Thompson employed also Lindsey Robinson. Will be in 4-15-42 sure 4-14-42 D. E. Thompson, Bro-in-law, bought mdse. on acc. without permission—has done this several times.—*J. L. Craft says positively sell no one but himself and wife.* Published public notice."

This was the status of accounts between the parties on October 13, 1942, when defendant wrote the Radford Ordnance Works the following letter:

"Please advise if you have in your employ a Mr. James Lewis Craft formerly employed with the Lindsey-Robinson Co., of Roanoke, Va., and residing at Route 1, Salem, Va.

"We are informed by his former employer that he is employed with your Company. The reason we are trying to locate this man is that he owes us a balance of 16.00 on account, which amount is long past due."

The service superintendent of the Radford Ordnance Works acknowledged the letter from Rosenberg and Sons and sent Craft the following memorandum:

"We are today in receipt of a letter from Oak Hall, Roanoke, Va., stating that your account of $16.00 with them is long past due. Letters of this kind are very annoying to this Company and we trust you will see fit to get in touch with Oak Hall and make immediate arrangements to take care of this account before they find it necessary to start legal action against you."

When Craft received this memorandum from his employer, he took it to Rosenberg and Sons, who made the following notation on the bottom of the memorandum slip:

"This account in the name of James Lewis Craft is not owed by said James Lewis Craft. The merchandise was bought by his brother in law Mr. D. E. Thompson. Our

object in locating Mr. Craft was to find out where we could locate Mr. Thompson."

Craft instituted this action by notice of motion against M. Rosenberg and Sons, Inc. The notice contains a count of common law libel and a count of insulting words under the statute. The jury returned a verdict for $400, on which the trial court entered judgment. From that judgment the defendant obtained this writ of error.

The petition and record present four main questions to be determined — (1) Whether the words, at common law, are actionable *per se*; (2) whether special damages were sufficiently alleged and proven to submit this issue to the jury; (3) whether the letter upon which the action is based is a privileged communication, and (4) whether the evidence is sufficient to sustain a verdict for plaintiff under the count for insulting words.

The defamatory words set forth in the letter of October 13, 1942, are: "The reason we are trying to locate this man is that he owes us a balance of 16.00 on account, which amount is long past due."

■■ The common law rule divides false, defamatory words which will sustain an action into five classes: "1. 'Words falsely spoken of a person which impute to the party the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. 2. Words falsely spoken of a person which impute that the party is infected with some contagious disease, where if the charge is true, it would exclude the party from society. 3. Defamatory words falsely spoken of a person which impute to the party unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. 4. Defamatory words falsely spoken of a party which prejudice such party in his or her profession or trade. 5. Defamatory words falsely spoken which though not in themselves actionable, occasion the party special damage.' The first four of these classes are slanderous *per se*, the other only when special damage results." Burks Pl. & Pract., 3 ed.,

sec. 165. See *Powell* v. *Young*, 151 Va. 985, 997, 144 S. E. 624, 145 S. E. 731; *Pollard* v. *Lyon*, 91 U. S. 225, 23 L. Ed. 308; Newell on Slander and Libel, 4 ed., p. 833-4; 4 Minor's Inst., 1 ed., 378 *et seq.*

■ There is no suggestion or imputation of dishonesty, insolvency or bankruptcy in the letter. It is not alleged that the plaintiff was a merchant or trader, or that he was engaged in an employment in which credit was an essential element. The alleged defamatory words do not tend to impair, nor are they, in any way, related to, the manner of the performance of the duties of plaintiff's employment. The common law rule applicable is that the false defamatory words are not actionable *per se.* See *Hudson* v. *Slack Furniture Co.*, 318 Ill. App. 15, 47 N. E. (2d) 502; *Harrison* v. *Burger*, 212 Ala. 670, 103 So. 842; *Estes* v. *Sterchi Bros. Stores*, 50 Ga. App. 619, 179 S. E. 222; *Douglas* v. *Weber*, 106 Misc. 338, 174 N. Y. S. 486; *Keating* v. *Conviser*, 127 Misc. 531, 217 N. Y. S. 117; *Porak* v. *Sweitzer's, Inc.*, 87 Mont. 331, 338, 287 P. 633; *Hamilton* v. *McKenna*, 95 Kan. 207, 147 P. 1126, L. R. A. 1915E, 455; *Stannard* v. *Wilcox, etc., Sewing Machine Co.*, 118 Md. 151, 84 A. 335, 42 L. R. A. (N. S.) 515; *Nichols* v. *Daily Reporter Co.*, 30 Utah 74, 83 P. 573, 3 L. R. A. (N. S.) 339, also reported in 8 Am. & Eng. Anno. Cas. 841.

■ A clear statement of the principle applicable is found in 33 Am. Jur., sec. 60: "As respects a charge of failure to pay debts, without any imputation of insolvency, it seems to be settled that a writing containing the mere statement that a person who is not a trader or merchant, or engaged in any vocation wherein credit is necessary for the proper and effectual conduct of his business, owes a debt and refuses to pay, or owes a debt which is long past due, is not libelous *per se* and does not render the author or publisher of such statement liable without proof of special damages. Such a statement does not in a legal sense necessarily expose the person of whom it is said to public hatred, contempt, or ridicule, nor does it degrade him in society, lessen him in

public esteem, or lower him in the confidence of the community."

It follows that the trial court committed reversible error when it instructed (Instruction A*) the jury that the words were actionable *per se*.

Defendant did not demur to the common law count in the notice of motion on the grounds that the false defamatory words were not actionable *per se* and that no special damages were alleged, but it did object to the introduction of any evidence tending to prove special damages. The precise question thus raised is whether the allegation and testimony are sufficient to sustain an instruction authorizing the jury to award plaintiff damages "for any loss or injury to his business, or occupation," as stated in instruction E.

The allegation is in general terms and concludes: "By reason of the premises aforesaid, the plaintiff has been greatly injured in his said employment." Neither the specific duties that the employer required the plaintiff to perform nor the particular damages which he suffered were alleged or proven. *James* v. *Haymes*, 160 Va. 253, 168 S. E. 333.

The only evidence on the issue is the testimony of plaintiff himself. On direct examination, he stated that he "had one of the best jobs in the plant, 83 cents an hour, and I was transferred and cut back to 78 cents an hour, which I quit on the 27th of December." On cross and re-direct-examinations, he said he was cut back to 67 cents an hour on December 20. The difference in compensation, whether five cents an hour or 16 cents an hour, was a substantial loss, and, if defendant's letter was the direct and proximate cause of this loss, it should be compelled to compensate the plaintiff for the reduction in his earnings.

"Special damages are such as in fact have actually occurred as the result or consequences of the injury com-

---

*"The Court instructs the jury that false words or utterances duly published imputing that the plaintiff did not pay his debts is actionable *per se*, that is, upon proof of such words, the plaintiff is not required by law to allege any special damage in his notice of motion, or prove any special damage before the jury. The law presumes injury to the plaintiff because of the publication of such words."

plained of, and not implied by law. They are either super-added to general damages arising from the act injurious in itself, as where some particular loss arises from the uttering of slanderous words actionable in themselves; or are such as arise from an act indifferent and not actionable in itself, but injurious only in its consequences, as where words become actionable only by reason of special damage ensuing.

■ "Special damages must always be the legal and natural consequence arising from the defamation itself, and not a mere wrongful act of a third person. Whenever special damages are claimed, in order to prevent a surprise on the defendant, which might otherwise ensue at the trial, the law requires the plaintiff to state the particular damage which he has sustained, or he will not be permitted to give evidence of it at the trial." Newell on Slander and Libel, 4 ed., sec. 556, p. 603.

■ The mere fact that, two months after receipt of the letter in question, plaintiff's employer transferred him from one "job" to another at less pay does not prove that defendant's letter to the employer was the cause of the transfer. In order for the plaintiff to hold defendant liable for the difference in compensation, it is incumbent upon him to establish by a preponderance of the evidence that his loss of compensation was the immediate consequence of the false defamatory words used by defendant.

Plaintiff showed the service superintendent of the Radford Ordnance Works the notation made by defendant on the memorandum slip sent him and told him that the defendant would write a letter explaining the situation. A few days thereafter, on October 22, 1942, the defendant wrote the employer the following letter:

"After investigating the account of *Mr. James Lewis Craft* we find that the purchase of the merchandise on this account was made by Mr. Craft's brother-in-law, Mr. D. E. Thompson and not by Mr. Craft.

"Mr. Craft has promised to try and locate Mr. Thompson for us. Mr. Craft was very much disturbed about this mat-

ter being brought to your attention and that is the reason for this letter of explanation.

"Thanking you for your co-operation, we are."

The two letters are the only communications concerning plaintiff that defendant made to the employer. Even if the first letter created a doubt in the employer's mind as to the reputation of the plaintiff in the payment of his debts, it would seem that the second letter was sufficient to remove this doubt. At least that should and would be the normal reaction of an employer, and a jury would not be justified in reaching a different conclusion in the absence of positive evidence to the contrary.

Again, the only evidence, tending to prove that the false defamatory statements in the letter were the sole proximate cause of the employer's transferring plaintiff to a "job" paying less wages, is found in the testimony of plaintiff. He stated: "When I got this letter from the plant up there there wasn't hardly any way I could explain; same as anybody over there would feel trying to establish credit for themselves." When asked whether the service superintendent had not informed him that the whole matter had been explained to the satisfaction of his employer, he said: "No, he only said he was sorry that it came up. He said to try and forget it. I told him how I felt, I told him I could not forget it. At that time I asked him why I got that transfer. He said he didn't know. Whatever they are going to do they do it. If they get something against you you will never know what for." He said his employers "made it so hard that I had to quit." He further said that his employer never informed him that his services were not satisfactory, and that no one stated to him that the letter had anything to do with his being transferred from one "job" to another with less pay.

The foregoing evidence of plaintiff was not pertinent or admissible in the absence of a specific allegation claiming special damages. If the notice of motion had contained such an allegation, the evidence would have been admissible as tending to prove special damages, but in the absence of addi-

tional evidence on the point, it was not sufficient on which to base an instruction or to sustain a verdict. It follows that the trial court committed error in admitting the testimony and instructing the jury that one element of damages which they might consider was "for any loss or injury to his business or occupation."

Defendant contends that the letter upon which this action is based is a privileged communication, and that the trial court committed error in refusing to so instruct the jury.

A creditor has a right to use all reasonable means to collect any just obligation due him, but he has no right to unduly interfere with the relation existing between an employer and the employee who may owe the debt. If an employee is damaged by reason of the creditor's illegal attempts to coerce payment through communications with the employer, the creditor is liable for any damages directly resulting from such actions. Normally, communications from a third party to an employer in an attempt to collect a debt owed by an employee are not privileged unless the employer has an interest in the subject matter.

Defendant cites and relies upon three cases to support its contention: *Dillard* v. *Collins*, 25 Gratt. (66 Va.) 343; *White* v. *Nicholls*, 3 How. (44 U. S.) 266, 11 L. Ed. 591; *Reusch* v. *Roanoke Cold Storage Co.*, 91 Va. 534, 22 S. E. 358. The reasoning and the decision in *Dillard* v. *Collins* are based upon the opinion of Mr. Justice Daniel in *White* v. *Nicholls*. Both cases declare that privileged communications are divided into four classes. Defendant contends, with some degree of plausibility, that the false defamatory words alleged in the case under consideration fall within the first class stated, to-wit: "1. Whenever the author or publisher of the alleged slander acted in the bona fide discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interests. For example, words spoken in confidence and friendship as a caution, or a letter written confidentially to persons who employed A as a solicitor, conveying charges injurious to his professional character in the management of certain concerns which they had en-

trusted to him, and in which the writer of the letter was also interested."

It is undoubtedly true that defendant wrote the letter of October 13 to plaintiff's employer in the prosecution of his own interest. If, then, the rule stated in the first sentence quoted in the preceding paragraph were literally applied, the letter would be a qualifiedly privileged communication. However, since the two cases were decided in 1845 and 1874, later decisions have held that the party receiving the communication must have a corresponding right or duty in the subject of the communication, as stated in the example illustrating the rule stated in the first sentence quoted.

The facts in *White* v. *Nicholls, supra,* show that the party sending the communications and the party receiving the communications had reciprocal duties or responsibilities pertaining to the subject matter. A number of residents of the District of Columbia presented several communications to the President of the United States, attacking White, who had been appointed collector of port, and charging him with dishonesty, fraud, concealment and using the foulest means to secure favor with the former administration. The trial court held that the communications were absolutely privileged and that there could be no recovery. On appeal, the Supreme Court of the United States made an extensive review of both the English and American cases and held that the communications were only qualifiedly or conditionally privileged, and that whether defendants had abused the privilege was an issue to be decided by a jury under proper instructions. It thus appears that in that case the communications were made concerning a public official to an officer having the appointing power, who had a corresponding duty or obligation.

In *Dillard* v. *Collins, supra,* a landlord said to his tenants: "He (The plaintiff) and all his sons are horse thieves and make their living by that means, and that they frequently harbored that kind of men." In the discussion of qualified privilege the same definitions were restated, but the court held that the relation of landlord and tenant was not such

as to render the communication qualifiedly privileged. There was no reciprocity of interest or duty.

The facts in *Reusch* v. *Roanoke Cold Storage Co., supra,* were that Reusch owed Roanoke Cold Storage Company for meat purchased by him. The Virginia Company owed Reusch for meat purchased by it from him. Crueger, president of the Roanoke Cold Storage Company, testified that he was informed by one of the agents of the Roanoke Cold Storage Company that Reusch had exceeded the limit of his credit with that company and that the Virginia Company had promised to pay the amount it owed Reusch directly to the Roanoke Cold Storage Company. Acting on this belief, he wrote the following letter to the Virginia Company:

"You are hereby notified to hold out of any funds due by you to Mr. N. Reusch, of Roanoke, the sum of $312.60, being the amount due by him to the Roanoke Cold Storage Company for meat furnished to you. This was furnished on the faith of receiving the money from you, and upon your assurance that your company would see it paid, hence you are notified, as a protection to yourself, not to pay the sum over to any one but this company.

"(Signed)   Roanoke Cold Storage Company,
           "By Herman Crueger, President.
"Roanoke, Va., Nov. 21, 1891."

The Virginia Company had made to the Roanoke Cold Storage Company no such promise as that stated in the letter. Notwithstanding the fact that defendant failed to prove that the Virginia Company had any interest in the subject matter, and without discussion, the court said: "The court below properly held that the letter complained of· was a privileged communication, and properly submitted to the jury the question whether the defendant had been guilty of malice in its publication."

This is the only Virginia case brought to our attention which holds that a communication is qualifiedly privileged when made by a party having an interest in the subject matter to a party having no corresponding interest or duty. This holding is contrary to the views expressed in

several later Virginia cases and is against the weight of authority in other jurisdictions. To this extent it should be and is hereby overruled.

We held, in *James* v. *Haymes*, 163 Va. 873, 178 S. E. 18, that a privileged occasion, strictly speaking, is confined to an occasion in which the party using the language on which the action is based had communicated the same to another party to whom he owed a duty—that is, the occasion is such that one or more members of the public are clothed with greater immunity than others.

In *Taylor* v. *Grace*, 166 Va. 138, 144, 184 S. E. 211, we said: "A communication, made in good faith, on a subject matter in which the person communicating has an interest, or owes a duty, legal, moral or social, is qualifiedly privileged if made to a person having a corresponding interest or duty." See *Rosenberg* v. *Mason*, 157 Va. 215, 160 S. E. 190, and other Virginia cases collected in 6 Michie's Digest of Virginia and West Virginia cases, Libel and Slander, secs. 16-22; 4 Michie's Digest of Virginia and West Virginia cases, Perm. Supp., Libel and Slander, secs. 16-22.

An exhaustive review of the English cases on the subject was made in 1930 by three judges of the King's Bench. See *Watt* v. *Longsdon*, 1 K. B. 130, 69 A. L. R. 1005, 1022. The three judges agreed that the most accurate statement of the rule was made by Lord Atkinson in *Adam* v. *Ward* (1917) A. C. 309, 334, Ann. Cas. 1917D, 249—H. L., as follows: "A privileged occasion is * * * an occasion where the person who makes a communication has an interest or a duty, legal, social, or moral, to make it to the person to whom it is made, and the person to whom it is so made has a corresponding interest or duty to receive it. This reciprocity is essential."

In 33 Am. Jur. 124, the principle is expressed thus: "The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only."

The Restatement of the Law on Torts, vol. 3, sec. 596, expresses the same principle in this language: "An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know."

In *Vail* v. *Pennsylvania R. Co.*, 103 N. J. L. 213, 136 A. 425, the facts were that the Pennsylvania Railway Company wrote a letter to plaintiff's employer stating that on a certain date plaintiff tendered an invalid ticket with which to pay the fare from New York to Newark, and refused to pay 31 cents, the amount of the fare, and that he was still due that amount to the company. The New Jersey court held that the letter charged the plaintiff with an indictable offense, stealing a ride on defendant's train. In disposing of the contention that the letter was conditionally privileged, the court said: "In order to be privileged, the communication must not only be *bona fide*, but it must also be with relation to a subject-matter in which the party communicating has an interest, or in reference to which he has a duty, and to a person having a corresponding interest or duty."

Defendant further contends that the evidence is insufficient to support a verdict for plaintiff under the count for insulting words.

Prior to the 1940 (Acts of 1940, p. 294) amendment to Code, sec. 5781, eliminating the sentence, "No demurrer shall preclude a jury from passing thereon," this court had held that an action for insulting words *was* an action for libel or slander for words actionable *per se*, except that the jury was the judge of whether or not the words used were insulting and that no publication was necessary. *W. T. Grant Co.* v. *Owens*, 149 Va. 906, 913, 141 S. E. 860, 863.

In *Corr* v. *Lewis*, 94 Va. 24, 26, 26 S. E. 385, it was said that while the court had inherent power "to correct any manifest departure from right and justice on the part of the jury, still it must be conceded that the jury is regarded as the best and safest tribunal for determining the issues in such

cases." This principle was repeated in *Boyd* v. *Boyd*, 116 Va. 326, 82 S. E. 110, 111, Ann. Cas. 1916D, 1173. See *Montgomery Ward & Co.* v. *Nance*, 165 Va. 363, 182 S. E. 264.

Because of this provision of the statute, this court was very reluctant to disturb any verdict returned by a jury in this class of action. However, in extreme cases it did apply the principle stated in *Corr* v. *Lewis, supra*.

In *James* v. *Haymes, supra* (163 Va. 873, 178 S. E. 18), we set aside the verdict of the jury and said, at page 886: "When a publication deals with a matter of public concern and the false statements of facts on which the publication is based are not defamatory *per se*, and it appears that defendant made the statements published for a proper purpose, in good faith, and had probable cause to believe, and did believe they were true, he will not be held liable even though their falsity is subsequently established; provided of course that the comment or censure does not exceed the limits of fair and reasonable inference drawn from the facts stated."

In *Federal Land Bank* v. *Birchfield*, 173 Va. 200, 3 S. E. (2d) 405, we set aside the verdict returned for the plaintiff because the words were not insulting in themselves, they were spoken on a privileged occasion and there was no evidence tending to show that defendant had abused its qualified privilege.

In *Guide Pub. Co.* v. *Futrell*, 175 Va. 77, 7 S. E. (2d) 133, a verdict for the plaintiff was set aside because neither the words used nor the circumstances under which they were used tended to show any reflection upon plaintiff.

The enactment of the 1940 amendment to the statute clearly reveals that it is now the intent of the legislature that the court should exercise the same power and authority over this class of actions that it exercises over actions of libel and slander.

The great bulk of business is conducted on credit, varying in length from a few days to six months or a year. Creditors, in order to make prompt collections, are com-

pelled to send dunning letters to debtors. To hold that an erroneous statement in such a letter, to the effect that a debt is long past due, is insulting and actionable, would subject creditors to needless hazards and hardships. The circumstances under which the letter now under consideration was written, the language used and the conduct of defendant before and after the true facts were called to its attention, clearly indicate that no insult was intended, and no compensable damages resulted therefrom.

The judgment of the trial court is reversed, the verdict of the jury set aside and final judgment is directed to be entered for defendant.

*Reversed and final judgment.*