## CIRCUIT COURT OF THE CITY OF ROANOKE

Joan Ziglar

v.

Media Six, Inc.,
Charles B. Roark,
and Errol W. Wallace, Jr.

February 18, 2003

Case No. CL02-132

BY JUDGE CLIFFORD R. WECKSTEIN

The question before the court is whether an elected public prosecutor can proceed with her suit against a newspaper and members of its editorial staff who published a letter to the editor that, she says, contained defamatory falsehoods about her. The answer is yes.

"The First Amendment rights of free speech and free press often clash with the interests served by defamation law. The press exists in large part to report on issues of public concern. However, individuals possess a right not to be subjected to falsehoods that impugn their character." David Hudson, *Defamation and the First Amendment*, The Freedom Forum First Amendment Center.[1] This case requires "the delicate and sensitive task of accommodating the First Amendment's protection of free expression of ideas with the common

---

[1] <http://www.freedomforum.org/templates/document.asp?documentID=14655> accessed February 8, 2003.

law's protection of an individual's interest in reputation." *Ollman v. Evans*, 242 U.S. App. D.C. 301, 750 F.2d 970, 974 (D.C. Cir. 1984), *cert. denied* 471 U.S. 1127 (1985) (*en banc*).

Joan Ziglar, the plaintiff, is the Commonwealth's Attorney of the City of Martinsville. Her office prosecuted Za' Kee P. J. Tahlib for murder. Tahlib wrote a letter which *Buzz*, a general-circulation newspaper, published. According to Ziglar's motion for judgment, defendant Errol Wallace, an editor at *Buzz*, edited the letter to make it more readable, defendant Charles Roark, the newspaper's publisher, approved the publication, and defendant Media Six, the company that owns *Buzz*, then published the letter in *Buzz* and on Media Six's Internet website. In addition to suing Media Six, Roark, and Wallace, Ziglar initially named Tahlib as a defendant. She has nonsuited her claim against him.

Each defendant has filed a demurrer, a pleading that says, in effect, that even if what the plaintiff states in her suit papers is true, she is not entitled to be in court. *See* James W. McIlhaney, "Trial Notebook: Litigation Traps," 29 *Litigation* No. 1, 61, 62 (2002). A demurrer tests only whether the plaintiff's factual allegations are sufficient to permit her to maintain a lawsuit, not whether she will prevail on the merits of her case. *Thompson v. Skate America, Inc.*, 261 Va. 121, 128, 540 S.E.2d 123 (2001); *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181 (1993). The court, when ruling on a demurrer, accepts the truth of all statements of material fact in the plaintiff's motion for judgment, draws all inferences in the light most favorable to her case,[2] and recites the facts of the case as they are stated in the motion for judgment. *Fuste* at 131-32. Under the Rules of the Supreme Court of Virginia, the offending publication is incorporated in the motion for judgment, since it was filed with and mentioned in the pleading. Rule 1:4(i).

In the law of defamation, false statements of fact that a person has committed a felony of moral turpitude or crime that is punishable by imprisonment in a state or federal institution or that injure a person in his or her profession or that impute that a person is unfit to perform the duties of an office or of gainful employment or that a person lacks integrity in carrying out the duties of his or her office or job are known as libel or slander *per se*, entitling the person who has been maligned to recover for injury to reputation, even if he or she cannot demonstrate any financial loss. *Fuste*, 265 Va. at 132-33; *Schnupp v. Smith*, 249 Va. 353, 360, 457 S.E.2d 42 (1995); *M. Rosenberg & Sons, Inc. v. Craft*, 182 Va. 512, 518, 29 S.E.2d 375, 151 A.L.R. 1095

---

[2] *Woods v. Mendez*, 265 Va. 68, 76, 574 S.E.2d 263 (2003); *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 131-32, 575 S.E.2d 858 (2003).

(1944). Subject to exceptions not relevant in this case, anyone who publishes (that is, who repeats) a libel or slander is as culpable as the person who originates the falsehood. *See Watt v. McKelvie*, 219 Va. 645, 248 S.E.2d 826 (1978); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 267 U.S. App. D.C. 337, 838 F.2d 1287, 1298 (D.C. Cir. 1988); *cf. WJLA-TV v. Levin*, 264 Va. 140, 153, 564 S.E.2d 383 (2002).

In the letter published in *Buzz*, Tahlib began by describing himself as someone who, though then serving a ten-year federal prison sentence, had been "a very high-profiled drug dealer" who "owned homes, six cars, and wore about $75,000 in diamonds and gold and platinum." (That is, drawing the inferences in the light most favorable to the plaintiff, Tahlib buttressed his credibility by first admitting negative things about himself.)

Notwithstanding that history, Tahlib wrote, he was in Martinsville "charged for something [he] had nothing to do with." Commonwealth's Attorney Ziglar had "trumped up" charges against him, he said, "for personal reasons," because of an intimate relationship that he had had with a "Cathy/Kathy Ziglar, told to me by her that she was Joan Ziglar's sister." Because of this relationship, Tahlib wrote, he had had at least two personal confrontations with Commonwealth's Attorney Ziglar. Animus toward him, he stated, caused the Commonwealth's Attorney not only to "conjure up a scheme to implicate me in this case" but also to make a deal with a witness "to lie at the Grand Jury and to implicate me even more." In additional derogatory statements about Ziglar, Tahlib charged her with dishonesty, hypocrisy, misfeasance, bigotry, and incompetence as Commonwealth's Attorney.

Tahlib's allegations about Ziglar were untrue. She does not have a sister named Cathy (or Kathy) Ziglar and never had the encounters that Tahlib described in his letter. The newspaper's editorial staff did nothing to investigate the accuracy of any of the letter's contents.

Though some of the statements in the letter clearly were no more than hyperbole or rhetorical flourish, anyone reading it would have understood that the writer asserted as fact that Ziglar procured perjured testimony against Tahlib in order to obtain indictment on charges that she had "trumped up" out of personal animus. *Food Lion, Inc. v. Melton*, 250 Va. 144, 150, 458 S.E.2d 580 (1995) ("A statement imputes the commission of a crime when it refers to matters that would naturally and presumably be understood by those hearing them as charging a crime."); *Moss v. Harwood*, 102 Va. 386, 388, 46 S.E. 385 (1904) ("Words must be construed in the plain and popular sense in which the rest of the world would naturally understand them.") The letter-writer set forth "facts" that, if believed, would lead readers to conclude that Ziglar lacked integrity in carrying out her office, "conjured up a scheme" to implicate an

innocent man in a murder case, was guilty of malfeasance in office, and was unfit to perform the duties of Commonwealth's Attorney. Procuring perjury is a felony, punishable by up to ten years in prison. Virginia Code (1950) §§ 18.2-10 (Cum. supp. 2002), 18.2-434 to 18.2-436 (Repl. vol. 1996). "Among the distinct crimes for which a public official may be indicted at common law are nonfeasance, misfeasance, and malfeasance in public office." *State v. Winne*, 12 N.J. 152, 96 A.2d 63, 68 (1953) (citing 1 Burdick, *Law of Crime* (1946), sec. 272) (Vanderbilt, C.J.). "The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Code § 1-10 (Repl. vol. 2001).

Because Ziglar is a public official, her claim is governed by the rule of *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964), and its progeny: Those who "hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-43, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). This is so because the "sort of robust political debate encouraged by the First Amendment is bound to produce speech that is critical of those who hold public office. . . . Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to 'vehement, caustic, and sometimes unpleasantly sharp attacks.' . . ." *Hustler Magazine v. Falwell*, 485 U.S. 46, 51, 99 L. Ed. 2d 41, 108 S. Ct. 876 (1988) (quoting *New York Times v. Sullivan*, 376 U.S. 254 at 270). Legitimate public interest extends to "anything which might touch on an official's fitness for office. . . . Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character." *Gertz*, 418 U.S. at 345 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 77, 13 L. Ed. 2d 125, 85 S. Ct. 209 (1964)). "Where the criticism is of public officials and their conduct of public business, the interest in private reputation is overborne by the larger public interest, secured by the Constitution, in the dissemination of truth." *Garrison v. Louisiana*, at 73.

In defamation cases, "whether the evidence . . . is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold. . . ." *Bose Corp. v. Consumers*

*Union of U.S., Inc.,* 466 U.S. 485 (1984). Judges make that independent decision on appeal; they also do so in the trial court. For example, before sending the case to the jury, or confirming a verdict, the judge must be satisfied that the public figure has produced sufficient evidence to support not only a finding that the statement was defamatory, but that it actually was false. *See Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776-77, 89 L. Ed. 2d 783, 106 S. Ct. 1558 (1986); *Bose,* 466 U.S. at 502-03, notes 20 and 21. At this stage of the case, though, there is no "evidence in the record." The court must accept as true the factual statements in Ziglar's motion for judgment. *Fuste,* 265 Va. at 133; *see supra.*

Courts throughout the nation agree that "strongly worded letters to the editor" are important parts of "that robust and uninhibited commentary on public issues that is part of our national heritage." *Kotlikoff v. The Community News,* 89 N.J. 62, 444 A.2d 1086, 1092 (N.J. 1982). Thus, "a letter to the editor of the local newspaper to expose a pattern of prosecutorial malfeasance" recently seemed to the U.S. Court of Appeals for the Fourth Circuit to be a prototypical example of "constitutionally protected speech." "[If an] assistant district attorney writes a letter to the editor of the local newspaper to expose a pattern of prosecutorial malfeasance, the speech is entitled to constitutional protection because it is made in the employee's capacity as a private citizen and touches on matters of public concern." *Urofsky v. Gilmore,* 216 F.3d 401, 409 (4th Cir. 2000) *(en banc), cert. denied,* 531 U.S. 1070 (2001). However, the decided cases also unanimously agree the rules used to evaluate actions against newspapers that publish allegedly defamatory letters to the editor are the same as those that apply in other defamation cases (notwithstanding a question that I posed during oral argument). *See Wood v. Dawkins,* 85 S.W.3d 312 (Tex. App. 2002); *Fort Worth Star-Telegram v. Street,* 61 S.W.3d 704 (Tex. App. 2001); *Wampler v. Higgins,* 93 Ohio St. 3d 111, 752 N.E.2d 962 (Ohio 2001) (Ohio's constitutional protections of opinion broader than those recognized by Supreme Court under federal constitution); *Tarpley v. Colfax Chronicle,* 650 So. 2d 738 (La. 1995) (letter about District Attorney); *Keohane v. Stewart,* 882 P.2d 1293 (Colo. 1994); *Grau v. Kleinschmidt,* 31 Ohio St. 3d 84, 31 Ohio B. 250, 509 N.E.2d 399 (Ohio 1987); *Di Bernardo v. Tonawanda Publishing Corp.,* 117 A.D.2d 1009, 499 N.Y.S.2d 553 (N.Y. App. Div. 1986); *Weaver v. The Pryor Jeffersonian,* 1977 OK 163, 569 P.2d 967 (Okla. 1977); *see generally,* George L. Blum, Annotation, *Defamation: Publication of Letter to Editor in Newspaper as Actionable,* 54 A.L.R. 5th 443 (1997); Donald M. Zupanec, Annotation, *Defamation: Publication of "Letter to Editor" in Newspaper as Actionable,* 99 A.L.R. 3d 573 (1980).

A newspaper's letters to the editor column often is an important forum for expression of passionately-held opinions about issues of public concern. *See Moriarity v. Lippe,* 294 A.2d 326, 332 (Conn. 1972). To be sure, as the Supreme Court explained in *Milkovich v. Lorain Journal Co.,* there is no "wholesale defamation exemption for anything that might be labeled 'opinion'." 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990). "However, 'pure expressions of opinion, not amounting to 'fighting words'," are protected by the First Amendment of the Constitution of the United States and Article 1, § 12, of the Constitution of Virginia. . . . Thus, 'speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action'." *Fuste,* 265 Va. at 132) (citations omitted). Put differently, only statements capable of being proven true or false are actionable. *See Moriarty v. Greene,* 315 Ill. App. 3d 225, 732 N.E.2d 730, 739 (Ill. App. 2000); *Milkovich,* 497 U.S. at 17 (quoting *Falwell,* 485 U.S. at 50).

*Milkovich* dealt with a newspaper column on a sports page, "a traditional haven for cajoling, invective, and hyperbole," according to the Ohio Supreme Court. *Milkovich,* 497 U.S. at 9 (quoting *Scott v. News-Herald,* 25 Ohio St. 3d 243, 25 Ohio B. 302, 496 N.E.2d 699, 708, n. 4 (Ohio, 1986)). Speaking through Chief Justice Rehnquist, the Supreme Court held that a statement, whether phrased as opinion or conclusion, that left "the impression that the writer was seriously maintaining that petitioner committed the crime of perjury" was actionable.[3] So, too, is a statement that gives the impression that the writer seriously maintains that the plaintiff committed the crime of procuring perjury. "The connotation that [Milkovich] committed perjury," or that Ziglar procured it, "is sufficiently factual to be susceptible of being proved true or false." *Id.* at 21.

Last month, in *Fuste v. Riverside Healthcare Ass'n,* the Supreme Court of Virginia held that the nature of physicians' professional responsibilities to their patients meant that statements that the doctors had " 'abandoned' their

---

[3] *Id.* at 21. "If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar'." *Id.* at 19.

patients and that there were 'concerns about their competence' not only prejudice the doctors in the practice of their profession but also contain 'a provably false factual connotation'." *Fuste*, 265 Va. at 133 (internal citation omitted). The statements published by the defendants in this case similarly must be considered in the context of a Commonwealth's Attorney's professional responsibilities.

"While [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935). To breach that duty, to "falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law," or bring or maintain "a charge that the prosecutor knows is not supported by probable cause" would violate Ziglar's professional responsibilities and subject her to disbarment or suspension of her license to practice law. Rules of the Supreme Court of Virginia, Part 6, § 2; Virginia Rules of Professional Conduct, Rules 3.4(c), 3.8. An assertion that a Commonwealth's Attorney "conjured up a scheme" to prosecute an innocent man and "trumped up" charges against him not only has a particular connotation in the context of a prosecutor's professional responsibility,[4] it contains a provably false factual connotation in the same manner as does a statement that a physician "abandoned" his or her patients. (Although the defendants have, correctly, noted that the plaintiffs in *Fuste* were neither office holders nor public figures, that distinction is more relevant to the plaintiff's burden of proving "actual malice" than to the question of whether statements in Tahlib's letter were actionable.)

Our Supreme Court in *Fuste* also held that whether a particular "alleged defamatory statement is one of fact or opinion is a question of law and is, therefore, properly decided by a court instead of a jury." *Fuste*, 265 Va. at 132-33. It is enough, however, for the court, in ruling on demurrers, to hold, as I do, that some of the assertions in the Tahlib letter are factual and actionable. I need not, at this stage, determine which of the statements the defendants published might be "pure expressions of opinion." *Id.* at 132 (quoting *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97 (1985)).

Ziglar has pleaded and, to prevail, must prove that the defendants acted with actual malice. Relying on the Supreme Court's decision in *St. Amant v.*

---

[4] *See Fuste*, 265 Va. at 127; *Newton v. Rumery*, 480 U.S. 386, 394, 94 L. Ed. 2d 405, 107 S. Ct. 1187 (1987); *United States v. Rolle*, 204 F.3d 133, 138 (4th Cir. 2000).

*Thompson*, 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968), the defendants assert that they had no duty to investigate the truth or falsity of Tahlib's letter, and that, therefore, no liability can attach for failure to do so. What is before the court, however, is not whether Ziglar ultimately can prevail in her suit, but only whether the facts, as she has stated them, set forth a claim upon which relief can be granted.

" 'Actual malice,' as that term is used in defamation cases, is a term of art that is separate and distinct from traditional common-law notions of malice. It does not include ill will, spite, or evil motive; rather, it is the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true. 'Reckless disregard' is defined as a high degree of awareness of probable falsity, and the evidence must show that the defendant in fact entertained serious doubts as to the truth of the publication." *HBO v. Harrison*, 983 S.W.2d 31, 36 (Tex. App. 1998). In pleading that the defendants acted with "actual malice," then, Ziglar makes an assertion of fact. "Indeed, in *Herbert v. Lando*, 441 U.S. 153, 170, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979), we referred in passing to actual malice as 'ultimate fact'." *Bose*, 466 U.S. at 498, n. 15. She says, and the court must at this stage believe, that when they published Tahlib's letter, defendants Roark, Wallace, and Media Six either knew, in fact, that the letter's defamatory factual statements were false, or, in fact, entertained serious doubts about the truth of those defamatory factual statements, or both.

For the foregoing reasons, I find that the plaintiff has stated against each of the defendants a claim upon which she is entitled to seek relief, overrule each defendant's demurrer to the motion for judgment, and direct that the defendants file their grounds of defense on or before March 14, 2003. On the motion of the defendants, the court has partially stayed discovery. That stay is now vacated.