# CIRCUIT COURT OF HANOVER COUNTY

Carl Wayne Koegler

    v.

Steven F. Green et al.

September 1, 2009

Case No. CL09000497-00

BY JUDGE J. OVERTON HARRIS

Before the Court are Defendants' demurrers. The Court heard argument on the demurrers on August 21, 2009, and took the matters under advisement. Following thorough review of the pleadings, the memoranda and briefs filed by counsel, the evidence presented, and the law, the Court finds as follows.

## I. *Background*

Mr. Koegler was employed by the Richmond-East Moose Lodge as an Administrator and Social Quarters Manager. He had been a member of the lodge since 1999 and held other positions in the lodge, such as Governor and District 9 President. An audit was conducted by Moose International on Richmond-East Lodge No. 1947. Larry Janise, who was employed by Moose International, conducted the audit. Based on the audit report, Richmond-East Lodge No. 1947 discharged Mr. Koegler from his position of employment. His membership at the lodge was suspended, and he was subsequently expelled from the Order of the Moose.

## A. *Steven Green, General Governor of the Loyal Order of the Moose*

Steven Green, as the General Governor of the Order of Moose, mailed two letters to Mr. Koegler, dated August 6, 2008, and August 19, 2008. Copies of both letters were attached to the complaint.

The letter dated August 6, 2008, informed Mr. Koegler that his membership as a Moose had been suspended and that Section 23.2 required he be informed of the charges and that he be afforded the opportunity to show cause before a final decision was entered concerning his membership. The letter also informed him that a copy of the charges were attached and that he was required to respond in writing within ten days. Mr. Koegler was informed that, if he did not respond within ten days, he would automatically be expelled from the Order of the Moose. The letter indicated it was copied to Matt Grove, Regional Manager, Byron Dalton, Assistant Director of Membership, and Richmond-East Lodge No. 1947.

The letter dated August 19, 2008, informed Mr. Koegler that he had been expelled from the Order of the Moose for failing to respond in writing to the charges as directed in the August 6, 2008, letter. He was informed that he was barred from going on the property of any Moose lodge, even as a guest. This letter also indicated it was copied to Matt Grove, Regional Manager, Byron Dalton, Assistant Director of Membership, and Richmond-East Lodge No. 1947.

## B. *Larry Janise, Senior Operations Analyst of the Loyal Order of the Moose*

Mr. Janise performed an audit on Richmond-East Lodge No. 1947. Based on his findings he issued an audit report and an accompanying letter. The letter, addressed to Steven Grove, alleged that funds were missing and recommended that the lodge officers file a bonding claim naming Administrator Wayne Koegler in the amount of $122,017.75. He also recommended that the local officers notify the Sheriff's office for investigation and prosecution.

## C. *Moose International, Inc.*

Steven Green and Larry Janise were employees of Moose International, Inc., at the time the letters were written and the audit was performed.

## D. *Keith Williams, Governor of Richmond-East Lodge*

Keith Williams was the acting Governor at the time Mr. Koegler was suspended and expelled from membership. Keith Williams attended certain board meetings where the accusations discovered in the audit were put forth.

On or about June 24, 2008, Keith Williams held a staff meeting where he discussed what had been said in the board meetings and informed bartenders at Richmond-East that Mr. Koegler had been suspended for stealing money.

### E. *Peggy Wainwright, Secretary-Treasurer of Mooseriders Association of Richmond-East*

Peggy Wainwright sent out numerous e-mails, one of which is dated October 6, 2008, and was attached to the complaint. Plaintiff quotes from Ms. Wainwright's e-mail, "one of which is Wayne Koegler, who is of questionable character. He is no longer an employee or member of the Moose. The investigation that cost him his job started with an e-mail that I made nearly a year ago."

### F. *Richmond-East Lodge No. 1947, Loyal Order of the Moose, Inc.*

Keith Williams and Peggy Wainwright were employed by Richmond-East Lodge No. 1947 at the times the statements were made and e-mails were sent. The actions taken and allegations made as a result of the audit report caused Mr. Koegler's friends, fellow employees, and associates at Richmond-East to say, "money is missing, and Wayne was in charge of it."

## II. *Standard of Review*

A demurrer may be employed to strike a pleading that does not state a cause of action or fails to state facts upon which relief may be granted. Virginia Code § 8.01-273. A demurrer admits the factual pleadings to be true and accepts any reasonable factual inferences fairly and justly drawn from them. *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988). "A court may examine not only the substantive allegations of the pleading attached, but also any accompanying exhibit mentioned in the pleading." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 278 (1993). The demurrer does not, however, admit the correctness of the pleading's conclusions of law. *Fox*, 236 Va. 69.

## III. *Analysis*

Foremost, this Court will closely scrutinize any cause of action that tends to inhibit speech because the First Amendment to the Constitution of the United States and the Constitution of the Commonwealth of Virginia protect

the right of people to "speak any [pure expression of opinion, not amounting to 'fighting words'], however ill-founded, without inhibition by actions for [defamation]." *American Communications Network, Inc. v. Williams*, 264 Va. 336, 340, 568 S.E.2d 683, 685 (2002). Before the court is one count of defamation against each of six named defendants.

> The common law rule divides false, defamatory words which will sustain an action in five classes: 1. Words falsely spoken of a person which impute to the party the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. . . . 3. Defamatory words falsely spoken of a person which impute to the party unfitness to perform the duties of an office or employment for profit, or want of integrity in the discharge of the duties of such an office or employment. 4. Defamatory words falsely spoken of a party which prejudice such party in his or her profession or trade. 5. Defamatory words falsely spoken which, though not in themselves actionable, occasion the party special damage. The first four of these classes are slanderous *per se*, the other only when special damage results.

*M. Rosenberg & Sons v. Craft*, 182 Va. 512, 518, 29 S.E.2d 375, 378 (1944).

The common law tort of defamation requires the plaintiff to prove: (1) publication (2) of a false (3) defamatory statement (4) concerning the plaintiff. *Gazette, Inc. v. Harris*, 229 Va. 1, 37, 325 S.E.2d 713, 738 (1985). However, the landscape of defamation law changed in 1964 with the decision of *New York Times v. Sullivan*, 376 U.S. 254 (1964). After *New York Times*, different standards were applied to claims by different kinds of plaintiffs. *Id.* Here, the plaintiff is a private individual and the defendants are non-media individuals and entities, thus the standard for recovery is negligence/reasonableness. *Gazette*, 229 Va. at 15, 325 S.E.2d at 724-25.

However, in order for the plaintiff to recover punitive damages, he must go farther and prove *New York Times* malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348-49 (1974). *New York Times* malice focuses only upon whether the defendant knew the publication to be false or evidenced reckless disregard of the publication's falsity. *New York Times*, 376 U.S. at 280. Proof of *New York Times* malice in order to recover punitive damages must be by clear and convincing evidence. *Gazette*, 229 Va. at 13, 325 S.E.2d 724.

Virginia also recognizes the common law defense of qualified privilege. *Gazette*, 229 Va. at 18, 325 S.E.2d at 727. This has been specifically applied in the employment context. *Shabazz v. PYA Monarch*, 271 F. Supp. 2d 797, 806-07 (E.D. Va. 2003) (noting that, in *Kroger Co. v. Young*, 210 Va. 564, 566, 172 S.E.2d 720, 722 (1970), the court found statements made "by an employer to his employees of the reason for the discharge of a fellow employee . . . are qualified privilege").

To overcome the qualified privilege, Plaintiff must prove common law malice by clear and convincing evidence. *Smalls v. Wright*, 241 Va. 52, 55, 399 S.E.2d 805, 808 (1991). Common law malice differs from *New York Times* malice and is defined as "some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff; or what, as a matter of law is equivalent to malice, that the communication was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff." *Preston v. Land*, 220 Va. 118, 120-21 (1979). It "is a court's duty to decide as a matter of law whether a communication is privileged," but "the question whether a defendant 'was actuated by malice, and has abused the occasion and exceeded [the] privilege' is a question of fact for a jury." *Fuste v. Riverside Healthcare Assn.*, 265 Va. 127, 134-35, 575 S.E.2d 858, 862-63 (2003). However, the Court must still determine whether [Plaintiff's] allegations of malice are sufficient as a matter of law to defeat the assertion of privilege.

Applying these principles, the Court now turns to each of the defendants in turn.

## A. *Steven Green, General Governor of the Loyal Order of the Moose*

The plaintiff admits that Mr. Green wrote the letters during the course of his employment with Moose International. The letters were copied only to the defendant and people who had a "corresponding interest or duty." *Taylor v. Grace*, 166 Va. 138, 144, 184 S.E.2d 211, 213 (1936). Accordingly, as a matter of law, qualified privilege applies to the letters.

There are insufficient facts pleaded, as a matter of law, even when taken as true, that could permit a finder of fact to conclude there was common law malice by clear and convincing evidence. Without sufficient facts, the plaintiff cannot overcome the qualified privilege that applies to the letters written by Steven Green.

Thus, the demurrer is sustained as to Steven Green.

### B. *Larry Janise, Senior Operations Analyst of the Loyal Order of the Moose*

Similarly, Plaintiff admits that Mr. Janise performed the audit, prepared the audit report, and wrote the letter accompanying the audit report during the course and in the scope of his employment with Moose International. Plaintiff does not allege that the report or its accompanying letter was disclosed to anyone who did not have a corresponding interest or duty. Accordingly, as a matter of law, qualified privilege applies to the audit report and its accompanying letter.

There are insufficient facts pleaded, as a matter of law, even when taken as true, that could permit a finder of fact to conclude there was common law malice by clear and convincing evidence. Without sufficient facts, the plaintiff cannot overcome the qualified privilege that applies to the report and letter written by Larry Janise.

Thus, the demurrer is sustained as to Larry Janise.

### C. *Moose International, Inc.*

Having concluded that Mr. Koegler's allegations against Steven Green and Larry Janise do not state claims for defamation, it is unnecessary to consider derivative liability of Moose International, Inc.

Moose International's demurrer is therefore sustained.

### D. *Keith Williams, Governor of Richmond-East Lodge*

Mr. Koegler alleges that Mr. Williams attended board meetings where the allegations set forth in the audit report were alleged. Plaintiff does not allege that the allegations were made in the presence of anyone who did not have an interest or duty. Accordingly, as a matter of law, qualified privilege applies to the statements made during the board meetings.

Mr. Koegler also alleges that Mr. Williams held a staff meeting with the bartenders on or about June 24, 2008, where he discussed what had been said in the board meetings and informed the bartenders that Mr. Koegler had been suspended for stealing money. This situation is analogous to *Kroger* where the court found statements made "by an employer to his employees of the reason for the discharge of a fellow employee . . . are qualified privilege." 210 Va. at 566, 172 S.E.2d at 722. Accordingly, as a matter of law, qualified privilege applies to the statements concerning the reason for Mr. Koegler's discharge made during the staff meeting.

There are insufficient facts pleaded, as a matter of law, even when taken as true, that could permit a finder of fact to conclude there was clear and convincing evidence of common law malice. Without sufficient facts, the plaintiff cannot overcome the qualified privilege that applies to the alleged board meetings or staff meeting.

Thus, demurrer is sustained as to Keith Williams.

### E. *Peggy Wainwright, Secretary-Treasurer of Mooseriders Association of Richmond-East*

The e-mail written by Ms. Wainwright does not contain any statements upon which relief may be granted. The statement about Mr. Koegler having questionable character is pure opinion. The statement that the Mooseriders have been victimized is also pure opinion. Neither statement can be objectively characterized as true or false. Accordingly, neither statement can support a defamation cause of action.

The sentences that followed Ms. Wainwright's opinion, which stated Mr. Koegler was no longer a Moose and that the investigation that cost Mr. Koegler his job was started by an e-mail she sent, are true by the Plaintiff's own admission. True statements of fact cannot support a defamation claim. Therefore, the complaint does not allege facts, as they relate to Ms. Wainwright, that can support a defamation cause of action.

Ms. Wainwright's demurrer is therefore sustained.

### F. *Richmond-East Lodge No. 1947, Loyal Order of the Moose, Inc.*

Having concluded that Mr. Koegler's allegations against Steven Green and Larry Janise do not state claims for defamation, it is unnecessary to consider derivative liability of Richmond-East as to their statements.

The allegation that the actions taken and allegations made as a result of the audit report caused Mr. Koegler's friends, fellow employees, and associates at Richmond-East to say "money is missing, and Wayne was in charge of it" does not support the cause of action of defamation against Richmond-East because there is no allegation that the statements were made during the course and scope of employment.

Thus, the demurrer is sustained as to Richmond-East.

### G. *Specificity*

In addition to the reasons stated above, the demurrers of Steven Green, Larry Janise, and Keith Williams are sustained because Mr. Koegler failed to plead facts with the requisite specificity set forth in *The Federal Land Bank of*

*Baltimore v. Birchfield*, 173 Va. 200, 215, 3 S.E.2d 405, 410 (1939). "Good pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further, that is, it must purport to give the exact words." *Id.*

Mr. Koegler alleges letters were sent to him by Steven Green, but never specifically pleads what statements contained in the letters were defamatory. Similarly, Mr. Koegler alleges the audit report and letter prepared by Mr. Janise contained defamatory statements, but never specifically alleges which statement were defamatory. Finally, Mr. Koegler alleges Keith Williams made defamatory statements about him at board meetings and staff meetings, but never specifically pleads the words that were allegedly spoken. These general accusations of defamation do not rise to the level of specificity required by *Birchfield*. *Id.*

Thus, the demurrers are also sustained as to Steven Green, Larry Janise, and Keith Williams.

## IV. *Conclusion*

For the reasons articulated in this opinion letter, the demurrers of all defendants are hereby sustained. Plaintiff is granted leave to amend his complaint within twenty-one days of the entry of the Order.